**Joan OTTO, Petitioner and Appellant,**

v.

**JOB SERVICE NORTH DAKOTA and Minn-Dak Farmers Co-op, Respondents and Appellees.**

**Civ. No. 11109.**

Supreme Court of North Dakota.

July 16, 1986.

Keith Wolberg, Bismarck, for petitioner and appellant.

Sidney Hertz Fiergola, Asst. Atty. Gen., Bismarck, for respondent and appellee Job Service North Dakota.

ERICKSTAD, Chief Justice.

Joan Otto appeals from a district court judgment affirming the decision of Job Service North Dakota ordering Otto to repay

benefits and disqualifying her from receiving further benefits for a period of one year. We reverse and remand.

Otto was a campaign worker[1] at the Wahpeton sugar beet processing plant of Minn-Dak Farmers Cooperative. On February 25, 1983, Otto requested a medical leave of absence. It was agreed between Otto and Minn-Dak's personnel manager that Otto's status would automatically convert from "medical leave" to "laid off" at the end of the campaign. Her status was subsequently converted to "laid off" when the campaign ended on March 24, 1983.

Otto's medical leave commenced on March 7, 1983, she underwent surgery on March 14, and she was released from the hospital on March 18. On March 28 she filed a claim for job insurance benefits, stating that she had left her last employment due to lack of work, that she was able to work, and that she was available for work.

In early July, Otto learned that a female co-worker had been hired for inter-campaign work[2] at Minn-Dak. Otto testified that this was the first instance of a female being employed for inter-campaign work. On July 5, Otto applied to Minn-Dak for inter-campaign work, and she was rehired on August 1.

After Minn-Dak questioned Otto's eligibility for benefits, Job Service investigated the claim. A claims deputy determined that Otto's separation from employment was not due to lack of work or good cause attributable to the employer, and that Otto had misrepresented the reason for separation and her ability to work. Otto was ordered to repay benefits received for the period from March 28 to August 1, and was disqualified from receiving further benefits for one year.

Otto appealed the deputy's decision, and a hearing was held by telephone conference call on January 1, 1984. The appeals referee concluded that Otto had intentionally misrepresented her ability to work and her availability for work.[3] The referee concluded, however, that by July 5, 1983, when Otto applied to Minn-Dak for inter-campaign work, she was able to work and available for work. The referee accordingly modified the deputy's decision, requiring repayment of benefits for the period between March 28 and July 5. Otto was disqualified from further benefits for one year. The referee's decision was affirmed on appeal by Job Service North Dakota and by the district court.

The dispositive issue presented on appeal is whether Job Service's findings that Otto was unable to work and unavailable for work between March 28 and July 5 are supported by a preponderance of the evidence.

Our review of administrative decisions is governed by Section 28–32–19, N.D.C.C., and involves a three-step process:

"(1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law?" *Sonterre v. Job Service North Dakota,* 379 N.W.2d 281, 283 (N.D.1985).

We review the decision of the agency rather than the decision of the district court, and accordingly we look to the record compiled by the agency. *Schadler v. Job Ser-*

1. A "campaign worker" is one who normally works only during the sugar beet processing season, or "campaign." The record indicates that Minn-Dak's "campaign" ordinarily lasts from early September through March of each year.

2. "Inter-campaign work" is plant maintenance work which is performed during the summer, between campaigns.

3. The appeals referee specifically overruled the claims deputy's determination that Otto's sepa-

ration from employment was not due to lack of work. Minn-Dak's personnel manager testified at the hearing that Otto's status was changed to "laid off" on March 24 because "it was the end of seasonal employment" and "she would have been placed on lay-off anyway" had she been working. The appeals referee concluded that "the status change from medical leave to lack of work was made by the employer." The referee therefore removed "the disqualification based upon separation from the employer."

*vice North Dakota,* 361 N.W.2d 254, 256 (N.D.1985). In applying the "preponderance of the evidence" standard we do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence. *Minot Farmers Elevator v. Conrad,* 386 N.W.2d 463, 465 (N.D.1986); *Sonterre v. Job Service North Dakota, supra,* 379 N.W.2d at 283.

### 1. Ability to Work

To be eligible for benefits, a claimant must be "able to work." Section 52–06–01(3), N.D.C.C. Job Service contends that Otto was unable to work for a period of six weeks after her surgery of March 14, and that she therefore was not entitled to receive benefits during that period.

Otto testified that on March 18, when she was released from the hospital, her doctor informed her that she could return to work "anytime in about a week or so" when she felt well enough to work. She further testified that on March 28 she felt capable of doing the same type of work she had done before. Otto's doctor submitted a written statement dated October 28, 1983, stating that "[o]rdinarily, the usual limitations are no lifting or straining six weeks from the date of surgery. There are no other restrictions." Upon a request for clarification, the doctor submitted a second statement, dated December 1, 1983, which states in part:

> "Her postoperative course was completely uneventful. She was dismissed from the hospital on 3/18/83. She could return to work after 3/28/83 as long as her work did not involve any lifting or straining. There are no other limitations on working."

Job Service apparently ignored this evidence and relied instead on the testimony of Jerry Pierson, Minn-Dak's personnel manager, who testified that Minn-Dak had received a physician's statement dated March 15, the day after Otto's surgery, indicating that Otto could return to work

six weeks after her surgery. This written statement by the doctor was not introduced into the record.

■ Job Service has relied entirely upon Pierson's testimony, based upon the doctor's alleged statement made on the day after surgery and which was not introduced into the record, while totally disregarding Otto's testimony and the doctor's two written statements included in the record which, with the hindsight of viewing Otto's postoperative recovery, indicate that Otto was able to work on March 28. Having reviewed the record compiled before the agency, we conclude that a reasoning mind could not reasonably determine that Job Service's finding on this issue is supported by the weight of the evidence. Thus, we conclude that Job Service's finding on this issue is not supported by a preponderance of the evidence.

### 2. Availability for Work

To be eligible for benefits, a claimant must be "available for suitable work." Section 52–06–01(3), N.D.C.C. Job Service contends that Otto was not available for work between March 28, 1983, and July 5, 1983, because she did not return to Minn-Dak prior to July 5 to apply for inter-campaign work.

Otto correctly asserts that there was no statutory requirement that she return to her prior employer to inquire about work as a condition of eligibility for benefits. Her failure to apply at Minn-Dak is therefore relevant only as evidence of her availability for work. Although failure to contact a prior employer would ordinarily be strong evidence supporting a finding of unavailability for work, the unusual circumstances presented in this case excuse Otto's failure to contact Minn-Dak. Otto testified that women had not previously been hired for inter-campaign work. There was no evidence presented to contradict her testimony. Furthermore, the record clearly establishes that when she learned that a female co-worker had been hired for inter-

campaign work at Minn-Dak, Otto immediately applied for inter-campaign work.

All other evidence indicates that Otto was available for work and was actively seeking work from March 28 through July 5. It is uncontroverted that Otto made numerous contacts seeking work with potential employers during this period. She indicated on her claim forms that she would accept any type of work which was available.

■ Having reviewed the record, we conclude that a reasoning mind could not reasonably determine that Job Service's finding on this issue is supported by the weight of the evidence. Under the unusual circumstances presented in this case, Otto's failure to apply for inter-campaign work at Minn-Dak, standing alone, does not support by a preponderance of the evidence Job Service's finding that Otto was unavailable for work.

Because Job Service's findings of inability to work and unavailability for work are not supported by a preponderance of the evidence, we conclude that Otto has demonstrated eligibility for benefits pursuant to Section 52–06–01, N.D.C.C. Accordingly, Job Service's decision requiring repayment of benefits and ordering disqualification from future benefits cannot be upheld.

The judgment of the district court affirming the decision of Job Service is reversed. Pursuant to Section 28–32–19, N.D.C.C., the matter is remanded to Job Service for disposition in accordance with this opinion.

GIERKE, MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, concurring in the result.

I concur in the result. I write separately because I am concerned with that portion of the majority opinion which appears to indicate that Job Service must rely on the statement submitted by Otto's doctor on October 28, 1983, some eight months after the actual operation. Under accepted principles of compensation law, Job Service

was not obliged to accept the October 28 testimony of Otto's doctor. Job Service may refuse to give credence to any witness's testimony when it appears that there are matters which impair its accuracy and this may arise when the intrinsic character of the evidence or the extrinsic circumstances of the case cast suspicion upon the evidence. See *Inglis v. North Dakota Workmen's Comp. Bureau*, 312 N.W.2d 318 (N.D.1981).

But in *Claim of Bromley*, 304 N.W.2d 412 (N.D.1981), which involved a claim for workmen's compensation in which a medical record relied upon by the Workmen's Compensation Bureau contained noticeable discrepancies, we stated, at page 417 of the reported case:

"If a report contains information directly supporting both denying and granting the claim and is not clarified by the Bureau, the discrepancies become critical when, as in this instance, the 'maker' of the inconsistent report is unavailable at the formal hearing to explain or clarify the discrepancies and the Bureau relies upon only one part of the report to deny the claim. This is especially true where all other reports, including the Bureau's investigative report, either support or are reconcilable with the claimant's statement and the claimant's testimony at the formal hearing reflects a factual situation which, if true, would entitle him to benefits, and the claimant also presented medical testimony pointing out the deficiencies in the Bureau's medical records."

I believe the same rationale applies to Job Service.

The same doctor who prepared the March 15, 1983, physician's statement to which Minn-Dak's personnel manager testified also prepared the October 28, 1983, statement and the December 1, 1983, clarification. In this respect it appears to me that the March 15 statement, if it were as testified to by the personnel manager, would be a matter which would impair the accuracy or cast suspicion upon the later statements. *Inglis, supra.* However, it

also appears to me that the doctor should have been directly asked about the contradiction between his March 15 and October 28 statements. Although Joan asked him for further information, which was given on December 1, 1983, I am not certain it removed all doubt about the March 15 statement. Nevertheless, in *Bromley* we cited with approval *Hassler v. Weinberger*, 502 F.2d 172 (7th Cir.1974), to the effect that an administrative agency may not select certain parts or rely upon a part or segment of a report, but must take into consideration the entire medical report or reports, including the history. Here, Job Service chose to believe testimony about a report not introduced into evidence without consideration of the remaining reports. Although I believe Job Service has the authority to do so if it believes the more recent reports were not accurate—for example, if it believes they were prepared solely for the purpose of assisting the claimant to obtain benefits and do not reflect the actual truth of the matter—I agree that in this case Job Service should not be able to do so without having requested a direct response as to the reason for what appears to be a discrepancy between the March 15 report and the October 28 report if, indeed, such a discrepancy existed.