Denise J. SKJEFTE, Petitioner
and Appellee,

v.

**JOB SERVICE NORTH DAKOTA and
Maintenance Engineering, Ltd.,
Respondents and Appellants.**

No. 11177.

Supreme Court of North Dakota.

Aug. 20, 1986.

David A. Garaas, of Garaas Law Firm, Fargo, for petitioner and appellee.

Sidney Hertz Fiergola, Asst. Atty. Gen., Bismarck, for respondent and appellant Job Service North Dakota.

David S. Marvin, of Nilles, Hansen & Davies, Ltd., Fargo, for respondent and appellant Maintenance Engineering, Ltd.

VANDE WALLE, Justice.

Job Service North Dakota and Maintenance Engineering, Ltd. (hereinafter referred to as M.E.), appealed from a judgment of the district court of Cass County reversing a decision of Job Service that Denise Skjefte was not entitled to unemployment benefits because she was discharged for misconduct. We reverse the judgment of the district court and affirm the decision of Job Service.

According to the findings of Job Service Skjefte was discharged from her employment because she allowed relatives to call her on her employer's toll-free number. The first incident regarding misuse of the toll-free number occurred in August 1984. On September 7, Skjefte's supervisor verbally informed Skjefte that her relatives should not use the toll-free number. On December 31, Skjefte received another personal call from her mother on the toll-free number. She was again warned and the warning was put in writing. She was also told and understood that if she received more calls of this nature she should inform the caller that she could not accept the call.

She was also warned that another call would result in her termination. Skjefte then asked her mother not to use the toll-free number any more. ·

Skjefte received a third call on the toll-free line on February 7, 1985, from her sister-in-law. The conversation lasted approximately six minutes. Skjefte did not ask if it was a toll-free call, nor did she advise the caller that she could not accept such calls. Skjefte was discharged when her employer, M.E., learned of the February 7 call. Job Service found that Skjefte was aware of her employer's policy prohibiting telephone calls of this nature.

The issue before us is whether or not Skjefte's actions constitute "misconduct" under Section 52–06–02(2), N.D.C.C., which provides that a person is disqualified for unemployment benefits for "the week in which he has been discharged for misconduct in connection with his most recent employment and thereafter until such time as ..."

The term "misconduct" is not defined in the North Dakota Unemployment Compensation statutes, but we have adopted the definition of that term from *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941), to the effect that "misconduct":

"... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

See *Blueshield v. Job Service North Dakota*, 392 N.W.2d 70 (N.D.1986); *Olson v. Job Service North Dakota*, 379 N.W.2d 285 (N.D.1985); *Schadler v. Job Service North Dakota*, 361 N.W.2d 254 (N.D.1985); · *Perske v. Job Service North Dakota*, 336 N.W.2d 146 (N.D.1983).

When we consider an appeal from a judgment of the district court reviewing the decision of an administrative agency, we review the decision of the agency, not the decision of the district court.[1] *Blueshield, supra.* Our review of administrative decisions is governed by Section 28–32–19, N.D.C.C., and that review requires us to determine: (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings of fact; and (3) if the agency decision is supported by the conclusions of law. *Otto v. Job Service North Dakota*, 390 N.W.2d 550 (N.D.1986). The standards we use in making such a determination have been summarized as follows:

1. We do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence.

2. We exercise restraint when we review administrative agency findings.

3. It is not the function of the judiciary to act as a super board when reviewing administrative agency determinations.

---

1. The trial court concluded that Job Service's finding of statutory misconduct was incorrect inasmuch as the evidence that the first two calls were from Skjefte's mother, that Skjefte told her mother not to call on the toll-free lines any more, and that her warnings apparently were followed indicated Skjefte was trying to save her job. The trial court further concluded that Skjefte's negligence was ordinary, not culpable, negligence and not the type of statutory misconduct which would amount to a disqualification for benefits. For the reasons stated in the opinion, we disagree.

4. We will not substitute our judgment for that of the qualified experts in the administrative agencies. *Blueshield, supra; Matter of Boschee*, 347 N.W.2d 331 (N.D.1984).

While there are occasions, because of the clarity of the particular facts and indisputability of the inferences drawn from those facts, when we can determine that particular conduct does or does not constitute "misconduct" as a matter of law, ordinarily the determination of whether or not particular conduct is "misconduct" is a question of fact. *Blueshield, supra.* Cf. *Carlson v. Job Service North Dakota*, 391 N.W.2d 643 (N.D.1986) [whether a person left employment voluntarily is a mixed question of fact and law]. The determination of misconduct depends upon the facts and circumstances of each individual case and as such is subject to the judgment of Job Service and its expertise. *Blueshield, supra.* We do not substitute our judgment for that of qualified experts in administrative agencies. *Sonterre v. Job Service North Dakota*, 379 N.W.2d 281 (N.D.1985).

M.E. hired Skjefte as a file clerk in 1979. She shared the use of a telephone with five other employees. M.E. has incoming toll-free WATTS lines for business purposes to allow sales people to telephone the office with questions or problems and to service accounts. One line is for calls originating in North Dakota and the other is for calls originating in one of the other 49 States. M.E. has a written policy prohibiting the release of the toll-free numbers to friends and relatives and the use of the toll-free lines for other than company business. Copies of the policy were given to supervisors who discussed the policy with the employees under their supervision. Skjefte testified she gave the numbers to her family members shortly after she was employed and before she was aware that the toll-free lines were not for personal use. Although the M.E. switchboard operator receives all incoming calls and transfers them to the proper extension, neither the operator nor the person answering the calls can determine whether or not they are calls coming in on the toll-free lines. All employees were notified that it was their responsibility to screen their incoming personal calls to determine whether or not they were on a toll-free line. M.E. has a computer system whereby calls are recorded and a print-out will reveal the date and time of the call, whether the call was on a toll-free line, to what extension the call was placed, and the duration of the call.

We conclude, from a review of the evidence, that it was sufficient to sustain the findings of Job Service and that a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence.

After the second of two incidents involving receipt of personal calls on toll-free lines, Skjefte, on January 3, 1985, was required to sign a statement to the following effect:

"This is the 2nd occurrence of mother phoning in on M.E. Watts line. I understand that one more episode (anyone calling in) will cause me to be terminated at Maintenance Engineering."

Despite this warning, she accepted another call on February 7, 1986, from a sister-in-law, which lasted approximately six minutes and during which Skjefte states she did not inquire whether or not the call was on a toll-free line and to terminate the call if it was. The call was on a toll-free line. Skjefte contends that she was discharged for accepting the telephone call despite the fact the call was directed to her extension telephone by M.E.'s switchboard operator and despite the fact she could not determine at that time whether or not the call was on a toll-free line.

Skjefte misconstrues the requirement of M.E. It was that she should immediately inquire if the personal call was on a toll-free line and, if it was, to inform the caller she could not accept calls on the toll-free lines and to immediately terminate the call. Skjefte contends that because she informed her mother after the December 1984 telephone call and warning that she should not use the toll-free lines and that because the

February 1985 call was from her sister-in-law, a finding of statutory misconduct is negated. We disagree. It is disingenuous to suggest that M.E. objected to calls from Skjefte's mother but not to calls from her sister-in-law. The evidence is clear that *all* personal calls on the toll-free lines were prohibited. The evidence is also clear that she was instructed that if she received a personal call it was her obligation to determine whether or not it was on a toll-free line and terminate the call. Thus it was not the fact she received the call which led to her discharge for misconduct; rather, it was because, as evidenced by her own testimony, she spoke with her sister-in-law concerning a jumbo birthday cookie for the birthday of her nephew's coach and her sister's pregnancy without determining whether or not the call was on a toll-free line and terminating the call. This conduct evinces a willful disregard of M.E.'s interests.

■ Skjefte also appears to argue that she forgot the proper procedure in screening personal telephone calls. She contends that she did not consciously disregard the interests of M.E. and thus her actions are distinguishable from the deliberate actions in *Schadler* and *Perske, supra,* wherein we upheld the denial of benefits because of the deliberate nature of the employee's actions. But, if we assume Skjefte forgot the proper procedures rather than deliberately ignoring them, it does not assist her. If, indeed, Skjefte forgot the proper procedures to follow so as to negate a finding of deliberate disregard of standards of behavior, such conduct following by a month her written acknowledgment of the consequences of recurrence of that conduct would nevertheless be "carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer."

Following the review process set forth above, we determine that the facts found by Job Service are supported by a prepon-derance of the evidence; that the conclusions of law are sustained by the findings of fact; and that the agency decision is supported by the conclusions of law. For the reasons stated herein we reverse the judgment of the district court, affirm the decision of Job Service North Dakota, and remand for entry of judgment affirming that decision.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.