Alfred EWERT, Petitioner
and Appellant,

v.

JOB SERVICE NORTH DAKOTA,
Respondent and Appellee,

and

Ramsey County, Respondent.

Civ. No. 11342.

Supreme Court of North Dakota.

March 26, 1987.

Michael C. O'Neel, Fargo, for petitioner and appellant.

Sidney Hertz Fiergola, Asst. Atty. Gen., Job Service North Dakota, Bismarck, for respondent and appellee.

MESCHKE, Justice.

We agree with Job Service that a worker who quits before an expected seasonal layoff "has left his most recent employment voluntarily without a good cause attributable to the employer" and is therefore statutorily disqualified from unemployment benefits. Accordingly, we affirm the denial of benefits in this case.

Alfred Ewert lived in Lisbon but for several annual working seasons (spring to fall) had been employed at Devils Lake by the Ramsey County Highway Department. During employment, he rented an apartment in Devils Lake and, each fall after layoff, moved back to Lisbon. While so employed by the Ramsey County Highway Department in 1986, he quit on October 2 before he was laid off.

Ewert claimed unemployment benefits, asserting that he quit in anticipation of the fall layoff that would have occurred shortly. Job Service found that he "left prior to lay off" and denied benefits, concluding that Ewert "has not established good cause attributable to the employer for leaving and, therefore, he is not entitled to job insurance benefits." On appeal, the district court concluded that the evidence supported the findings by Job Service and affirmed. In his appeal to this Court, Ewert argues that since he quit his job "in the face of a certain and imminent lay off," he did not quit "voluntarily" so that he is entitled to unemployment benefits.

The evidence is conflicting as to when Ewert would have been laid off. He claims that he only expected about six more days of work, and that his living expenses at his Devils Lake apartment, paying rent for another full month, would have been more than his earnings from remaining seasonal work. His supervisor claimed, and Job Service found, that Ewert "left work when there were almost six weeks of work left for him to do." But, we regard this evidentiary conflict about when the layoff was expected as immaterial because it is not disputed that Ewert quit before he was laid off for the season.

Ewert asks us to extend our ruling in *Carlson v. Job Service North Dakota,* 391

N.W.2d 643 (N.D.1986), that an employee who resigns, rather than awaits certain discharge for insufficient job performance, is entitled to unemployment benefits. In *Carlson,* we viewed a planned firing for job failings other than disqualifying "misconduct" as "good cause attributable to the employer". We reasoned that "no purpose would be served by constructing a concept of 'voluntariness' that requires continuation of the necessarily unpleasant atmosphere between a fired employee and a frustrated employer." 391 N.W.2d at 646. No comparable reason aids Ewert. We do not agree with Ewert that a quit in anticipation of a seasonal layoff is virtually the same as a quit before certain discharge for insufficient job performance.

Indeed, any application of the law of unemployment benefits which condones or encourages early departure of seasonal workers could handicap seasonal employers and could risk leaving them short-handed in the last and critical days to complete a season's work. Even a personal reason that is impelling to the employee, like Ewert's expectation that his living expenses away from home would exceed his earnings for the remainder of the season, can hardly be a "good cause attributable to [his] employer," the standard set by the legislature in N.D.C.C., § 52-06-02(1). Ewert voluntarily quit for his own reasons "without good cause attributable to [his] employer." This disqualifies him for unemployment benefits under N.D.C.C., § 52-06-02(1).

Ewert relies upon *Eason v. Gould, Inc.,* 66 N.C.App. 260, 311 S.E.2d 372 (N.C.Ct. App.1984), pointing out that it was cited in *Carlson, supra,* for the general proposition that "an employee who resigns rather than awaiting certain discharge is not disqualified from unemployment compensation." 391 N.W.2d at 646. *Eason* held that a claimant, who quit 15 days before a layoff "due to a 'slow down' at the plant where she worked," was not disqualified where "she was forced to live with her parents, who were moving." But, *Eason* did not involve a seasonal layoff. We decline to extend the *Eason* reasoning to a seasonal layoff.

There may be circumstances where a quit in advance of a layoff would be for "good cause attributable to the employer," but purely personal reasons like Ewert's for advancing an expected seasonal layoff are not.

Accordingly, we hold that the district court was correct in affirming Job Service's denial of unemployment benefits to Ewert.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.