David WAHLSTROM, Petitioner
and Appellee,

v.

JOB SERVICE NORTH DAKOTA,
Respondent and Appellant,

and

Twin City Construction Co.,
Inc., Respondent.

Civ. No. 11377.

Supreme Court of North Dakota.

May 28, 1987.

Leslie Johnson-Soetebier, Fargo, for petitioner and appellee.

Sidney Hertz Fiergola, Asst. Atty. Gen., Job Service North Dakota, Bismarck, for respondent and appellant.

MESCHKE, Justice.

We consider whether an employee, who quits for self-employment after his regular job is made tentative and temporary, can later qualify for unemployment benefits. We hold that he can. Accordingly, we affirm the district court's reversal of the denial of benefits to the employee.

Twin City Construction employed David Wahlstrom as a cabinet builder in 1981. In March 1985, Twin City closed its cabinet shop but kept Wahlstrom on to do other carpentry work and odd jobs.

In July 1985 talk about layoff began. Wahlstrom testified:

"A. ... They talked about it a couple of times and it never came about and never came about, because they always found more cleaning to do.

"....

"Q. They had already told you that you'd be laid off in two weeks?

"A. Yes. Well, they'd been talking about it for weeks, actually. But then every time it came down to the last day, then they found some other cleaning or something to do so, you know, then me and my co-worker would be staying on."

His supervisor testified that he had discussed layoff with Wahlstrom "the last couple months":

"Q. Did you tell him when that would occur?

"A. It was never really definite. I said it could happen in a couple weeks or it may happen, you know, at the end of this week. It's—it's hard to say, you know, with time being it is that maybe something would have came up and we would have kept right on working for awhile longer, but the way it was looking here—that he was going to get laid off.

"...."

"Q. They [Wahlstrom and a co-worker] really had temporary work with you then?

"A. Yeah.

"Q. And you kept telling them that it was temporary?

"A. Yeah."

On November 1, 1985, Wahlstrom left Twin City for self-employment as a carpenter. When that venture was unsuccessful, Wahlstrom sought unemployment benefits. Job Service denied benefits, ruling that Wahlstrom "had voluntarily left his employment for reasons which were not attributable to the employer."

After hearing, a Job Service referee found:

"Beginning in July of 1985, the company did tell the claimant that they did not know how long his employment would last but that he would be laid off in the near future. The claimant was more or less working from week to week. On November 1, 1985, the claimant quit his employment when he had lined up some work as a self-employed carpenter. Approximately December 15, 1985, the claimant filed for benefits when he could no longer find work in self-employment.

"The company did have further employment available for the claimant but would have discontinued his employment sometime during the month of November."

The referee denied benefits, saying:

"The claimant voluntarily quit his employment because he believed he had found better employment. The company had additional employment available to the claimant. The employer did not cause the claimant's unemployment and, therefore, under North Dakota law he is not entitled to benefits."

On Wahlstrom's appeal of the Job Service ruling, the district court recognized it was "a particularly hard case" but initially affirmed. Within two weeks, the district court reconsidered in the light of our then recent decision in *Carlson v. Job Service North Dakota*, 391 N.W.2d 643 (N.D.1986), reversed Job Service, and held that Wahlst-rom was eligible for unemployment benefits. The district court reasoned:

"It is clear that the Petitioner in this case would not have resigned but for the fact that he was being terminated or laid off. Since his layoff was then certain, the Petitioner was forced to try his hand at self-employment which lasted approximately 45 days. He quit a temporary job in an attempt to avoid unemployment.

". . . .

"He should not be penalized for acting in good faith. Petitioner's allegation that he quit his employment for reasons attributable to the employer is accurate, and the agency's decision is not supported by its findings of fact and is not in accordance with the law. Petitioner acted in good faith and with no choice. He did not leave to seek better work; he left to be able to continue work. The Referee's finding that '[t]he company did have further employment available for the claimant but would have discontinued his employment sometime during the month of November,' and that he was 'more or less working from week to week,' makes it clear that his layoff or discharge was certain and that he quit before being terminated or laid off. Hence, the factual finding indicating that the company had further employment available for him as a finding of fact and reason for the decision does not support the conclusion that the Petitioner voluntarily quit."

Job Service appeals, asking reinstatement of its ruling that Wahlstrom was not eligible for unemployment benefits. Job Service argues that since Wahlstrom left employment for self-employment, his reason for leaving was not attributable to his employer.

An employee who leaves employment "voluntarily without good cause attributable to the employer" is not entitled to unemployment benefits. N.D.C.C. § 52–06–02(1). We observed in *Carlson v. Job Service North Dakota*, 391 N.W.2d 643, 645 (N.D.1986) that "whether a person left employment 'voluntarily' is a mixed question of fact and law, where the evidence must

support findings of fact which, in turn, must sustain the conclusion of 'voluntariness.' " But, "it is not possible to determine accurately whether the act of a worker in leaving his job was voluntary unless one takes account of the causes which led to his action." Crum, *"Constructive Voluntary Quit" Disqualification—A Study in Employment Security,* 44 N.D.L.Rev. 309, 311 (1968). To fairly apply the statutory disqualification, the findings and conclusions of Job Service, as the administrative agency responsible for administering unemployment benefits, must accurately identify the principal cause of an employee leaving employment. N.D.C.C. § 28–32–19.

Thus, in *Carlson, supra,* we ruled that a planned firing for job failings other than disqualifying misconduct was "good cause attributable to the employer," which made a quit involuntary. On the other hand, in *Ewert v. Job Service North Dakota,* 403 N.W.2d 4 (N.D.1987), we held that a worker who quit "for purely personal reasons" before a planned seasonal layoff "left his most recent employment voluntarily without a good cause attributable to the employer." In *Ewert,* we recognized that "[t]here may be circumstances where a quit in advance of a layoff would be for 'good cause attributable to the employer'."

The findings show that the transformation of Wahlstrom's once permanent and regular employment to something tentative and temporary was caused by his employer, not by his own doing. The employer changed the "rules" of his employment in the middle of the "game." Thus, Wahlstrom's leaving his employment at Twin City was plainly and principally brought about by this pronounced uncertainty, "from week to week," a reason attributable to the employer.

Since Wahlstrom left for self-employment, his conduct was consistent with a genuine desire to continue to work. There is nothing in the findings to suggest that he was trying to take advantage of unemployment benefits "for purely personal reasons" as in *Ewert.*

The administrative decision failed to take into account the unfavorable action of the employer, although the agency's findings identified that action. An administrative agency must base its decision upon the record as a whole. *Roberts v. North Dakota Workmen's Compensation Bureau,* 326 N.W.2d 702 (N.D.1982).

Therefore, we conclude, as the district court did, that the findings do not support the agency's decision and that Wahlstrom left his employment at Twin City for a "good cause attributable to the employer," which made his leaving involuntary.

Accordingly, the district court correctly reversed the denial of unemployment benefits to Wahlstrom.

LEVINE and GIERKE, JJ., concur.

VANDE WALLE, Justice, dissenting.

Except to note that "whether a person left employment 'voluntarily' is a mixed question of fact and law, where the evidence must support findings of fact which, in turn, must sustain the conclusion of 'voluntariness,' " little discussion can be found in the majority opinion of the standard of review applicable in appeals from decisions of administrative agencies. An examination of that standard, which applies to the review conducted by the district court on appeal as well as to this court, reveals that:

"1. We do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence.

"2. We exercise restraint when we review administrative agency findings.

"3. It is not the function of the judiciary to act as a super board when reviewing administrative agency determinations.

"4. We will not substitute our judgment for that of the qualified experts in the administrative agencies." *Skjefte v. Job Service North Dakota,* 392 N.W.2d 815, 817 (N.D.1986); Sec. 38–32–19, N.D. C.C.

Furthermore, when this court considers an appeal from a judgment of the district

court reviewing the decision of an administrative agency, we review the decision of the agency, not the decision of the trial court. *Skjefte, supra.*

Although it may seem trite to constantly repeat these standards, it apparently is necessary to do so lest we rationalize, expressly or impliedly, that the court should really make the decisions which the Legislature has specified are to be made by the administrative agency.

Applying these standards of review to this case, I would reverse the decision of the district court and affirm the decision of Job Service North Dakota.

As the majority opinion notes, the district court apparently was influenced by this court's decision in *Carlson v. Job Service North Dakota*, 391 N.W.2d 643 (N.D.1986). However, *Carlson* was a far different case from this. *Carlson* involved an employee who quit because she was told she was being fired for insufficient job performance and, as Justice Meschke, writing for the court, observed at page 646 of the reported decision: "[N]o purpose would be served by constructing a concept of 'voluntariness' that requires continuation of the necessarily unpleasant atmosphere between a fired employee and a frustrated supervisor."

In this instance, however, the employer, Twin City Construction, closed the department in which Wahlstrom, the employee, worked, but nevertheless attempted to keep him employed by finding other work for him to do. We were informed that although this other work involved considerably less skill than was required in his position as a cabinetmaker, Twin City Construction continued to pay him at the same rate he earned while working as a cabinetmaker. I have difficulty in imagining two more different situations. Nor do I deem the statement in *Ewert v. Job Service North Dakota*, 403 N.W.2d 4 (N.D.1987), that "There may be circumstances where a quit in advance of a layoff would be for 'good cause attributable to the employer,'" as being in any manner prophetic. Rather, it seems to me that it may be very difficult to rationalize a distinction between this case and *Ewert* in which a worker quit

before a planned seasonal layoff. If the planned layoff is the key to these cases, there is no distinction. The only distinction between this case, *Ewert*, and *Carlson* is, in my estimation, the reason for the layoff. The concept of "voluntariness" is different for persons who are scheduled for planned layoffs that have nothing to do with job performance and those who quit because they are to be fired for insufficient job performance.

ERICKSTAD, C.J., concurs.