MEDCENTER ONE, INC.,
Petitioner and Appellee,

v.

JOB SERVICE NORTH
DAKOTA, Respondent,

and

Sharon Krein, Respondent
and Appellant.

Civ. No. 870024.

Supreme Court of North Dakota.

July 31, 1987.

Mark D. Mehlhoff, Legal Assistance of ND, Inc., Bismarck, for respondent and appellant.

Lundberg, Nodland, Lucas & Schulz, Bismarck, for petitioner and appellee; argued by Timothy D. Lervick.

MESCHKE, Justice.

Medcenter One, Inc., discharged employee Sharon Krein. Job Service North Dakota awarded unemployment benefits to Krein. The district court reversed, holding that she was discharged for misconduct and, therefore, not qualified for benefits. We affirm the district court.

Krein, a registered nurse, worked at Medcenter One from May 1983. In November 1985, a written warning to her complained:

"1. Increased use of the telephone for personal calls on duty time.

. . . . .

"3. Talking to personnel about her personal problems, which is affecting rapport with co-workers."

The warning stated that her supervisor "had discussed the phone calls and letting personal problems interfere with job performance before with Sharon" and that "any further infraction would result in a final warning."

On January 29, 1986, Krein was given a second written warning and was placed on probation for 30 days for:

"During the p.m. shift on Jan 27, 1986 Sharon was observed by a physician, who reported to me that Sharon was monopolizing the time of a Social Service employee, openly discussing her divorce and ignored a mother with a child for admission.

"The P.M. Supervisor on duty also reported that she received staff complaints about Sharon's need to visit, rather then [sic] attending to her assignments."

The warning stated that Krein was expected to "[r]efrain from talking about [p]ersonal [p]roblems" and that "[s]atisfactory improvement must be shown within the designated time frame and maintained or the following disciplinary action will be taken: Termination."

On March 16, 1986, Krein's work was favorably evaluated and she received a two percent salary increase. Her supervisor recommended that Krein "[c]ontinue to follow standards & expectations of disciplinary action."

Krein was fired on May 21, 1986, after a patient complained about Krein discussing personal problems with her. This, and other incidents, were detailed by Krein's supervisor:

"1. Patient verbalized the following complaint to nursing staff & attending physician—'I can't believe she told me all that, as if I don't have enough problems of my own. You know, she told me all about her divorce and everything before, the last time I was in. The only thing new she told me was she was going to court Monday for child abuse. She was in here at least an hour. I have so much on my mind the way it is. I sure didn't need that.'

"2. Sharon continues to make personal phone calls on duties [sic].

"3. Spends lots of time visiting with a correspondence coordinator.

"4. Commented to a physician, 'Have you found a boyfriend for me yet?'"

Krein sought unemployment benefits. Medcenter One reported to Job Service:

"Claimant was released from duty because of a patient complaint. She had been counselled and warned previously regarding discussion of her personal problems."

A Job Service claims deputy denied benefits because Krein was discharged for misconduct.

Krein obtained a hearing. She admitted talking about her personal problems with the patient but claimed that the conversation was started by the patient:

"And when this lady was in, I did not have—I was not taking care of the front block, and I did answer her light one Sunday evening. And she said, 'Well, how are things going?' And I said, 'Everything is just a mess.' And she said, 'Well, why don't you sit down and talk about it?' She said, 'Have a piece of candy and sit down.' I said, 'Well, I'm kind of busy,' because I was working on a different block. And I left and I answered her light later that night, and she said, 'Well, how are things going?' And I had a few minutes, and I stood there and I told her how, some of the stupid things my husband was doing—my ex-husband was doing to me. And that's, you know, what I said. He, you know, turned me in for child abuse which is just a joke, but it's still, you know, aggravating and stuff. And that's more or less, you know, what I had discussed with her then. And she sat and talked to me and

things. And the other nurses were in there for long periods of time and, you know, I wasn't the only one in there and stuff, so that's where that came about. Nothing was ever said."

Krein did not contradict the patient's report that Krein was in her room "at least an hour."

The hearing referee also denied benefits, reasoning:

"The claimant had been warned about her personal conduct on the job two previous times and committed another infraction. This showed a substantial disregard of the employer's interests on the part of the claimant and is misconduct in connection with her work."

Krein requested further review by Job Service, which found:

"In May 1986, the claimant was discharged because she discussed a personal matter with a patient and made personal phone calls while on duty. The claimant denies that her phone use was excessive. The employer did not provide any documentation regarding the phone calls. The discussion of personal matters with the patient is admitted by the claimant; however, the discussion was initiated by a patient who knew the claimant from a previous hospital stay."

Job Service reversed the referee's decision and granted benefits, saying:

"The claimant had been warned regarding her performance problems but had corrected them to the extent that she was given a favorable evaluation and raise in March. The evidence is not sufficient to establish that the claimant used the telephone excessively. Although the claimant was previously warned regarding discussing personal problems, her response to an inquiry constitutes a good faith error in judgment. The record does not show that the claimant willfully or wantonly disregarded her employer's interests. Although the employer may have considered the claimant an unsatisfactory employee, the evidence does not establish that the claimant was discharged for reasons that consistute [sic] misconduct."

Medcenter One appealed and the district court reversed Job Service's decision. The district court concluded:

"It appears, however, that Job Service has attempted to view the last instance of disregard of the employee's instructions in a vacuum and has dissociated that conduct from the previous conduct of the employee. That, of course, is not a realistic nor permissible appraisal of the situation.

"The employee had been warned explicitly on more than one occasion not to discuss her personal problems with patients. She admits that she did so. She does not claim that she forgot the instructions she had been given. It was a deliberate act on her part, and the fact that the patient may have initiated the conversation furnishes her no excuse for disregarding her employer's instructions.

"The agency has attempted to characterize this conduct as 'an error of judgment.' But there was no judgment whatever involved in the context in which we are here considering it. She was told not to do so, and she did it. She intentionally disregarded a reasonable requirement imposed upon her by her employer. The *first occasion* that she discussed her personal problems with a patient might have been characterized as an error of judgment if she had not been previously warned against doing this. After having been so warned, there is, as I have just noted, no judgment involved.

"The long and short of the matter is that the employee intentionally disregarded a reasonable requirement imposed upon her by her employer as a condition of employment. That is misconduct." (Emphasis in original.)

Krein asks us to reinstate benefits.

One who "has been discharged for misconduct in connection with his most recent employment" is disqualified for unemployment benefits. NDCC § 52–06–02(2). While the term "misconduct" is not defined in our statutes, we have determined that misconduct demonstrating a willful or wanton disregard of the employer's interests disqualifies. Thus, an em-

ployee who deliberately violates or disregards standards of behavior which the employer rightfully expects is guilty of disqualifying misconduct. Similarly, an employee who is careless or negligent to such a degree or recurrence as to manifest equal culpability, wrongful intent, or evil design is disqualified. However, disqualification does not result from mere insufficiency, unsatisfactory conduct, failure in good performance due to inability or incapacity, isolated instances of inadvertency or ordinary negligence, or good faith errors in judgment or discretion. *Skjefte v. Job Service North Dakota*, 392 N.W.2d 815, 817 (N.D. 1986).

■ The parties disagree on the applicable standard of review for misconduct. Krein contends it is ordinarily a question of fact, citing *Blueshield v. Job Service North Dakota*, 392 N.W.2d 70 (N.D.1986). Medcenter One argues it is a question of law, citing *Olson v. Job Service North Dakota*, 379 N.W.2d 285 (N.D.1985). Like most administrative determinations, misconduct is a mixed question of fact and law. *See Skjefte, supra*, 392 N.W.2d at 818. Thus, for the agency's decision to be upheld, the evidence must support its findings of fact which, in turn, must sustain its conclusion regarding misconduct. *Blueshield, supra*, 392 N.W.2d at 75 (Levine, J., concurring).

■ On appeal of an administrative agency decision, we review the decision of the agency, not that of the district court. *Skjefte, supra*. But, the analysis by the district court is entitled to respect because the legislatively mandated review by the district court cannot be ineffectual. And, where the agency has rejected a hearing officer's decision, a necessary part of our inquiry is whether the agency's decision satisfactorily explains the reason for not following the hearing officer's recommendation. *Schultz v. North Dakota Dept. of Hum. Serv.*, 372 N.W.2d 888 (N.D.1985). And *see Olson v. Job Service North Dakota*, 379 N.W.2d 285, 288 (N.D.1985) (VandeWalle, J., concurring in part and dissenting in part).

These facts are noticeably similar to *Skjefte v. Job Service North Dakota*, 392 N.W.2d 815 (N.D.1986). Skjefte received two warnings for violating her employer's policy prohibiting acceptance of personal phone calls on its toll-free line. The policy required employees to screen personal calls they received and terminate those which were toll-free. After her second warning, she acknowledged in writing: "I understand that one more episode (anyone calling in) will cause me to be terminated. . . ." About one month later, she accepted another toll-free call from a sister-in-law, which lasted nearly six minutes. She was discharged and sought unemployment benefits. Job Service decided she was discharged for misconduct and denied benefits. The district court reversed and Job Service appealed to this court.

On appeal, Skjefte contended that because her previous warnings were for accepting toll-free calls from her mother and the third call was from her sister-in-law, a finding of statutory misconduct was negated. We disagreed, viewing it as "disingenuous" for Skjefte to suggest that her employer objected to calls from her mother but not from her sister-in-law. We reversed the district court and reinstated Job Service's denial of benefits, holding that Skjefte's conduct was a willful disregard of her employer's interests. We also said "such conduct following by a month her written acknowledgment of the consequences of recurrence of that conduct would nevertheless be 'carelessness or negligence of such degree or recurrence as to manifest equal culpability. . . .'" 392 N.W.2d at 819.

The district court may have misconstrued the record in declaring that Krein had been previously warned "not to discuss her personal problems *with patients*." (Emphasis added.) She had been warned not to discuss her personal problems with co-workers. But, Krein does not seriously attempt to distinguish between discussing personal problems with co-workers and doing so with a patient. Instead, she concentrates, as did Job Service, on the circumstance that the patient began the conversation. She argues, and Job Service agreed, that "her

response to an inquiry constitutes a good faith error in judgment" and not misconduct.

It cannot be questioned that Krein knowingly violated a requirement of Medcenter One. Indeed, she acknowledged as much:

"Well, being she asked, I supposed I could have told her to mind her own business. I suppose I could have told her I would just as soon not talk about it.

.  .  .  .  .

"... And I suppose I really should have, you know, told her nothing, but it's too late now."

A conscious, but minor, deviation from an employer's requirement is not a willful disregard of an employer's interests. Good faith exercise of judgment may be involved. Thus, while Krein's ideal response to the patient's question may have been to politely decline discussion, a short response might have been acceptable, either as regarding the employer's interests or as a good faith error in judgment. But, that isn't what happened.

■ While the patient started the conversation, she apparently heard more about Krein's life than she desired. Krein did not deny that the conversation lasted for "at least an hour." During that length of time, what may have begun as a good faith error in judgment degenerated into willful disregard of Medcenter One's interests or, at least, " 'carelessness or negligence of such degree or recurrence to manifest equal culpability....' " *Skjefte* 392 N.W.2d at 819. At that point, as the district court observed, "no judgment was involved."

The length of the conversation with the patient had an obvious bearing on the issue of misconduct. Its importance was ignored by Job Service. Thus, we conclude that Job Service's finding of a good faith error in judgment is not supported by a preponderance of the evidence, and thus, its findings do not sustain the conclusion that there was no disqualifying misconduct.

We affirm the decision of the district court.

ERICKSTAD, C.J., GIERKE and VANDE WALLE, JJ., and EVERETT NELS OLSON, District Judge.

OLSON, District Judge, sitting in place of LEVINE, J., disqualified.