Dorothy KEMPEL, Plaintiff and Appellee,

v.

JOB SERVICE OF NORTH DAKOTA, Defendant,

and

St. Alexius Medical Center, Defendant and Appellant.

Civ. No. 940374.

Supreme Court of North Dakota.

May 9, 1995.

Sean O. Smith of Tschider & Smith, Bismarck, for defendant and appellant.

Kent M. Morrow of Severin and Ringsak, Bismarck, for plaintiff and appellee.

Douglas Alan Bahr, Atty. Gen. Office, Bismarck, appearance as amicus curiae.

LEVINE, Justice.

St. Alexius Medical Center appeals from a district court judgment reversing a decision of Job Service of North Dakota denying unemployment compensation benefits to its former employee, Dorothy Kempel. Because the agency's findings of fact are supported by a preponderance of the evidence and sustain its conclusion that Kempel was terminated for misconduct, we reverse the district court judgment and affirm the decision of Job Service.

Dorothy Kempel was employed for twelve years as a communications clerk in the psychiatry unit of St. Alexius Medical Center (St. Alexius). Kempel's duties as communications clerk included answering incoming telephone calls, monitoring the locked doors to the psychiatry unit, and transcribing doctors' orders. Included in these orders were "stat orders," written orders by physicians which have to be immediately communicated to and carried out by the nursing staff.

On June 2, 1993, Kempel received a "counseling statement" from her supervisor at St.

Alexius. A counseling statement is a written report which defines an employee's deficient areas of job performance and sets standards for future job performance. Kempel's counseling statement identified several areas of deficiency, including failing to communicate "stat orders" to nurses in a prompt manner, a negative attitude toward St. Alexius staff and patients, use of profanity in and around the nursing station, and discussing personal concerns to the detriment of her job duties. The counseling statement warned that Kempel would be suspended or terminated if she did not perform her job duties according to the standards. There was no limitation on the length of time Kempel's conduct was open to review by her supervisors, the counseling statement apparently creating an indefinite probationary status.[1]

On September 28, 1993, Kempel was terminated from St. Alexius, because of several complaints about her job performance. Joan Hruby, a registered nurse with whom Kempel worked in the psychiatry unit, wrote to Kempel's immediate supervisor about the difficulties she had working with Kempel. She described Kempel as rude, intimidating and abusive to her in the presence of hospital staff and patients. Kempel refused to help her when she was having difficulty operating the computer. Hruby complained that during September, Kempel had made four different transcription errors on a patient's chart, had failed to inform Hruby about a "stat order" until over an hour after the physician had written the order, and had engaged in lengthy personal telephone calls, to the neglect of her other duties.

After her termination, Kempel applied to Job Service for unemployment benefits. Her claim was initially denied by a Job Service claims deputy who found that Kempel had been discharged for misconduct related to her employment. Kempel appealed, and a Job Service appeals referee reversed the claims deputy's decision. St. Alexius appealed the referee's decision to Job Service, which, after a telephonic hearing, reversed the referee's award of benefits because Kem-

pel had been terminated for misconduct. Kempel appealed the decision to the district court, which remanded to Job Service for a redetermination of Kempel's eligibility, based upon the evidence in the record and any additional evidence provided by the parties.

A second hearing was conducted by Job Service in April 1994. The result of that hearing was a second decision denying Kempel unemployment compensation benefits. Kempel once again appealed to the district court, which reversed, finding that the agency's finding of misconduct was not supported by the law or the evidence.

St. Alexius appealed, asking for reinstatement of the decision of Job Service. It argues that the agency correctly determined that Kempel was discharged from St. Alexius for misconduct related to her position as a communications clerk. We agree.

 Our review of a Job Service decision to deny unemployment benefits is governed by NDCC § 28–32–19, Administrative Agencies Practice Act, which requires us to affirm Job Service's decision if: (1) its findings of fact are supported by a preponderance of the evidence; (2) its conclusions of law are sustained by its findings of fact; and (3) its decision is supported by its conclusions of law. *Skjefte v. Job Service North Dakota*, 392 N.W.2d 815 (N.D.1986). We review the decision of Job Service, not that of the district court. *Lovgren v. Job Service North Dakota*, 515 N.W.2d 143 (N.D.1994).

 Whether conduct may be defined as misconduct is a mixed question of fact and law. *Marion v. Job Service North Dakota*, 470 N.W.2d 609 (N.D.1991). We will affirm Job Service's finding of misconduct if a preponderance of the evidence supports its findings of fact which, in turn, sustain its conclusions of law. *Medcenter One v. Job Service North Dakota*, 410 N.W.2d 521 (N.D.1987). "In applying the 'preponderance of the evidence' standard we do not make independent findings of fact or substitute our judgment

---

1. Kempel testified that she believed the counseling statement created a ninety-day probationary period; however, she conceded that the counseling statement stated that it would be reviewed "upon the next occurrence" and no one from St. Alexius told her that her probation was limited to ninety days.

for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence." *Otto v. Job Service North Dakota,* 390 N.W.2d 550, 552 (N.D.1986).

█ After an evidentiary hearing, Job Service found that Kempel failed to communicate a "stat order" to Hruby, a registered nurse, in September of 1993. It also found Kempel refused to allow an outpatient, who had arrived early for therapy, into the psychiatry unit, forcing another staff member to intervene, and then Kempel mimicked the patient when she became emotionally upset. The agency also found that Kempel made personal phone calls during work hours leaving incoming business phone calls unanswered or forcing nursing staff to answer the phones. In addition, Job Service found Kempel exhibited unprofessional and negative behavior which included slamming charts, using profanity in the nurse's station of the psychiatry unit, and behaving rudely toward staff and patients.

█ Kempel contends that the findings of Job Service are contradicted by her testimony that she never made long personal phone calls or made inappropriate comments to patients. However, it is the province of Job Service to act as the fact finder, not ours. *Lovgren,* 515 N.W.2d at 145. The agency weighed the evidence and judged the credibility of witnesses, and we defer to its findings on those issues. *Id.* We have reviewed the record and are satisfied that a reasoning mind could reasonably have determined that the weight of the evidence established that Kempel engaged in the described conduct. *Marion,* 470 N.W.2d at 612.

Kempel argues even if she did occasionally behave rudely and "forget" one "stat order," no harm came to anyone as a result and her conduct was merely an isolated instance of bad judgment or inadvertence, not misconduct.

Although "misconduct" is not defined by our statutes governing unemployment compensation, we have adopted the following definition:

"[Misconduct] is limited to conduct evincing such [willful] or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of [an] employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to [the] employer." *Perske v. Job Service North Dakota,* 336 N.W.2d 146, 148 (N.D.1983).

In *Schadler v. Job Service North Dakota,* 361 N.W.2d 254 (N.D.1985), we affirmed Job Service's denial of benefits to an employee discharged from her job as a nurse's aide in a nursing home when she failed to appear for work and neglected to notify her employer. The nursing home's absenteeism policy required employees to call in if unable to work and to secure a replacement. *Id.* at 255. Although no documented harm came to any resident due to Schadler's single unexcused absence, we affirmed the finding of misconduct because "[t]he presence of the nurse's aides at the Baptist Home, a nursing care facility, is of critical importance. The absence of an aide, even for a short period of time, compromises the care given to the residents of the Home." *Id.* at 257.

Kempel's position as communications clerk plays a critical role in St. Alexius' psychiatry unit akin to that of the nurse's aide in *Schadler.* Her job duties include communicating medical staff "stat orders" to the nursing staff. The communications clerk thus provides an essential link between the medical and nursing staffs. "Stat orders" are priority treatment orders which must be promptly and accurately communicated to the nursing staff. If a "stat order" were not communicated immediately to the appropriate nurse by the communications clerk, a patient's condition could worsen, causing harm not only to the patient but, in the case of an aggressive patient, resulting in injury to other patients, and staff members. The failure to communicate even one "stat order" compromises the care and safety of St. Alexius' patients and staff.

Kempel had been warned in the June 2, 1993, counseling statement that she was expected to promptly communicate "stat orders" to the nursing staff. Despite these warnings, Kempel "forgot" about a "stat order." Further, her mean-minded treatment of the outpatient, whose entry she barred, compromised the care of that particular patient. Kempel's continued neglect of those job duties intimately connected with the health and welfare of patients, after being warned by her employer of expected behavior standards, evinces "carelessness or negligence of such degree ... to show an intentional and substantial disregard of [St. Alexius'] interests" and constitutes disqualifying misconduct. *Skjefte*, 392 N.W.2d at 819. *See also, Medcenter One*, 410 N.W.2d at 525; *Lovgren*, 515 N.W.2d at 146; *Marion*, 470 N.W.2d at 612.

Job Service also found that, in disregard of warnings by St. Alexius, Kempel engaged in fifteen- to thirty-minute personal telephone conversations, conduct which we have recognized constitutes misconduct. *Skjefte*, 392 N.W.2d 815. We cannot say that Kempel's disregard of the prohibition against personal telephone calls does not evince "a willful disregard of [St. Alexius'] interests." *Id.* at 819.

The agency's conclusion that Kempel's actions constitute disqualifying misconduct is sustained by its findings which are, in turn, supported by a preponderance of the evidence and, therefore, we reverse the district court judgment and reinstate Job Service's decision to deny Kempel unemployment compensation benefits. *See Medcenter One*, 410 N.W.2d 521.

Reversed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.