2000 ND 23

**COTEAU PROPERTIES CO.,**
**Applicant and Appellee,**

v.

**Herbert OSTER and Ruth Oster,**
**Respondents and Appellants,**

**North Dakota Public Service**
**Commission, Appellee.**

No. 990264.

Supreme Court of North Dakota.

Feb. 22, 2000.

Kent M. Morrow (argued) of Severin, Ringsak & Morrow, Bismarck, for respondents and appellants.

Brian R. Bjella (argued) of Fleck, Mather & Strutz, Bismarck, for applicant and appellee.

Charles E. Johnson, Special Assistant Attorney General, and William W. Binek, Special Assistant Attorney General, Bismarck, for appellee North Dakota Public Service Commission.

NEUMANN, Justice.

[¶ 1] Herbert Oster and Ruth Oster appeal from the trial court's order[1] affirming the Public Service Commission's decision approving Coteau Properties' mining permit revision. We affirm.

[¶ 2] Coteau Properties Company operates the Freedom Mine located north of Hazen in Mercer County. In 1992, the North Dakota Public Service Commission ("PSC") issued Coteau Properties a mining permit. On April 28, 1998, Coteau Properties applied for a permit revision to add approximately 80 acres and change the post-mining use on 637 acres. The proposed post-mining use change included a 45-acre lake, Harmony Lake. Harmony Lake would be fed by Antelope Creek and used for recreational boating and fishing.

Herbert and Ruth Oster own 960 acres located below Harmony Lake's proposed site. East Antelope Creek crosses the Osters' land.

[¶ 3] On August 31, 1998, the North Dakota State Water Commission ("Water Commission") held a public hearing concerning the proposed lake.[2] The Osters attended the hearing and argued against the Harmony Lake proposal. On October 30, 1998, the Water Commission found Harmony Lake would not unduly affect the Osters' downstream water interests and issued a conditioned permit to Coteau Properties. The conditioned permit allowed senior downstream users to file a complaint with the Water Commission if the superior downstream rights were unduly affected. The State Engineer, acting on behalf of the Water Commission,[3] could then pass inflows through Harmony Lake and to the unduly affected downstream user, or order a modification of Harmony Lake.

[¶ 4] On December 2, 1998, the PSC approved the mining permit revision (Revision No. 10). On December 17, 1998, the Osters requested a formal hearing. A formal PSC hearing was held on January 15, 1999, and on January 27, 1999, Revision No. 10 was affirmed. On February 28, 1999, the Osters appealed the PSC's decision to the district court, but did not appeal the October 30, 1998, Water Commission decision. The district court affirmed the PSC's decision. The Osters now appeal to this Court.

[¶ 5] An appeal from a PSC decision is governed by the Administrative

---

1. The Osters appeal from the trial court's order affirming the Public Service Commission decision. An attempted appeal from an order will be treated as an appeal from a subsequently entered consistent judgment, if one exists. *Chapman v. Wells*, 557 N.W.2d 725, 732 n. 3 (N.D.1996). The record contains a subsequent judgment entered on September 10, 1999. The judgment is consistent with the order; therefore, the appeal is properly before us.

2. The Water Commission may hold hearings relating to a claimant's rights. N.D.C.C. § 61–02–43.

3. The State Engineer is a member of the Water Commission and serves as its secretary. N.D.C.C. § 61–02–05.

Agencies Practice Act, N.D.C.C. ch. 28–32. *Northern States Power Co. v. North Dakota Public Service Com'n,* 452 N.W.2d 340, 342 (N.D.1990). In *Singha v. North Dakota State Bd. of Medical Examiners,* 1998 ND 42, ¶¶ 13–14, 574 N.W.2d 838, we explained our standard of review under the Administrative Agencies Practice Act.

Under N.D.C.C. § 28–32–19 we must affirm the [agency's] decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. Provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

If the order of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency for disposition in accordance with the order of the court.

Our review of the factual basis for the [agency's] decision involves a three-step process to decide whether its findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, and its decision is in accordance with the law and is supported by its conclusions of law. *[Sletten v.] Briggs,* 448 N.W.2d [607, 610 (N.D.1989) ]. In applying the preponderance-of-evidence standard, we do not make independent findings of fact or substitute our judgment for that of the [agency]; rather, we decide only

whether a reasoning mind reasonably could have decided the [agency]'s factual conclusions were proved by the weight of the evidence from the entire record. *Id. See Power Fuels, Inc. v. Elkin,* 283 N.W.2d 214, 220 (N.D.1979). It is not our function to act as a super board when reviewing decisions by an administrative agency. *Skjefte v. Job Serv. N.D.,* 392 N.W.2d 815, 817 (N.D.1986). In technical matters involving agency expertise, we have acknowledged the agency decision is entitled to appreciable deference. *Montana–Dakota Util. Co. v. Public Serv. Comm'n,* 413 N.W.2d 308, 312 (N.D.1987).

*Singha,* at ¶¶ 13–14.

■ [¶ 6] The Osters argue the PSC's findings concerning the diminution of water quantity and quality were not supported by a preponderance of the evidence. We disagree.

[¶ 7] The Harmony Lake project must "not result in the diminution of the quality or quantity of water utilized by adjacent or surrounding landowners for agricultural, industrial, recreational, or domestic uses." N.D.C.C. § 38–14.1–24(7)(f). The Osters contend this statute mandates absolutely zero increased water alkalinity or decreased water flow in East Antelope Creek. The Osters fail to recognize the Harmony Lake project must not result in quality or quantity diminution of water *utilized.* The Water Commission, PSC, and Coteau experts agreed Harmony Lake, as conditioned by the water permit, would not adversely affect the Osters' use of East Antelope Creek as a downstream livestock watering source. A neighbor of the Osters also testified the area could support livestock through groundwater fed pools. Additionally, the Environmental Health Section of the North Dakota Department of Health certified the "project will not violate applicable State Water Quality Standards." The Osters provided

only speculations. The PSC's findings were supported by a preponderance of the evidence.

[¶ 8] The Osters argue the PSC must make its own determination of whether Harmony Lake will "not result in the diminution of the water quality or quantity of water utilized by adjacent and surrounding landowners for agricultural, industrial, recreational, or domestic uses" and whether "[t]he rights of a prior appropriator will not be unduly affected." N.D.C.C. §§ 38–14.1–24(7)(f), 61–04–06(1). We agree. Coteau incorrectly argues this is an impermissible collateral attack on the Water Commission's decision to grant the water permit, from which the Osters did not appeal.

N.D.C.C. § 38–14.1–24 applies to the PSC and provides:

General performance standards ... must require the permittee at a minimum to:

* * * *

7. Create ... permanent water impoundments in accordance with the requirements of the state engineer pursuant to other applicable state law and all of the following standards:

* * * *

f. Such water impoundments will not result in the diminution of the quality or quantity of water utilized by adjacent or surrounding landowners for agricultural, industrial, recreational, or domestic uses.

[¶ 9] The PSC is not an appellate forum to review Water Commission decisions. However, N.D.C.C. § 38–14.1–24(7) does require the PSC to make its own assessment of the effect of mining and reclamation operations on water quantity and quality and the rights of prior users.

The PSC must apply the same standards as the State Engineer and the additional standards listed under N.D.C.C. § 38–14.1–24(7). Yet, the PSC does not trump the State Engineer. If the State Engineer issues a water permit for a permanent water impoundment, the PSC can apply the standards, make an independent assessment, and deny the impoundment. *Id.* However, if the State Engineer does not issue the permit, the PSC cannot apply the standards, make an independent assessment, and approve the impoundment, because the PSC does not have the power to appropriate water. *See* N.D.C.C. ch. 61–04 (granting water appropriation powers to the Water Commission).

[¶ 10] Section 61–04–06, N.D.C.C., provides one of the water permit standards used by the State Engineer. Under this section, the State Engineer shall issue a permit if the rights of the prior appropriator will not be *unduly affected.* It is undisputed the Osters are prior appropriators.

[¶ 11] Here, the State Engineer decided Harmony Lake would not unduly affect the Osters' rights or result in the diminution of the quality or quantity of water the Osters use. The State Engineer issued the water permit and the Water Commission found the water permit, as conditioned, would not unduly affect the Osters' superior rights. A PSC Environmental Scientist, with the Reclamation Division, then reviewed all available data and concluded "Harmony Lake, as proposed in Revision 10 .... has been designed to maintain the quantity, quality and hydrologic regime of surface and groundwater systems and will not materially damage the hydrologic balance and water availability within or near the permit area." After reviewing all available information and hearing testimony, the PSC made its own determination based on an independent assessment of whether Harmony Lake would

"result in the diminution of the quality or quantity of water utilized by adjacent or surrounding landowners" and whether "[t]he rights of a prior appropriator will not be unduly affected." *See* N.D.C.C §§ 38–14.1–24(7)(f), 61–04–06(1). This assessment satisfied N.D.C.C. § 38–14.1–24(7).

[¶ 12] The trial court's judgment affirming the PSC's decision approving Coteau Properties' mining permit revision is affirmed.

[¶ 13]GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.