239 N.W.2d 819 (1976)
STATE HOSPITAL, JAMESTOWN, North Dakota, Plaintiff and Appellee,
v.
NORTH DAKOTA EMPLOYMENT SECURITY BUREAU, Defendant and Appellant.
Civ. No. 9142.
Supreme Court of North Dakota.
March 12, 1976.
*820 Clinton R. Ottmar, Sp. Asst. Atty. Gen., Jamestown, for plaintiff and appellee.
Lawrence E. Watson, Sp. Asst. Atty. Gen., Bismarck, for Employment Security Bureau, for defendant and appellant.
*821 VOGEL, Justice.
This case presents the question whether an employee who is retired against his will at age 67 is entitled to unemployment compensation.
Albert J. George was employed by the North Dakota State Hospital, an agency of the State of North Dakota, from March 28, 1960, to December 31, 1972. His employment was terminated at the latter date because of a mandatory retirement policy adopted by the hospital pursuant to Executive Order No. 43 of the Governor of North Dakota.
On February 8, 1973, he filed a claim for unemployment insurance benefits, including a statement that he was forced to retire from the State Hospital because of his age, but was looking for full-time work. When notified of the claim, the employer replied that "Mr. George reached mandatory retirement age on December 31, 1972, and was retired. His birth date is 2-27-1904." The Unemployment Compensation Division determined that
". . . he did not quit work voluntarily. It is determined that his termination was for reasons other than misconduct in connection with work within the meaning of the law. No disqualification is imposed."
The employer then wrote to the Employment Security Bureau:
"We appeal the determination of unemployment compensation because the claimant has retired under the provisions of the State Retirement Policy and is eligible for Social Security as well as the State Retirement Plan benefits."
A hearing was thereupon held, at which a representative of the employer testified that George was retired because of a mandatory requirement that all employees who on January 1, 1973, are 67 years of age shall retire on January 1, 1973. She testified that there was no way that he could have worked beyond December 31, that his work was satisfactory, and that the only reason for his termination was the mandatory retirement age.
The Employment Security Bureau appeals tribunal determined that an employee is disqualified for unemployment benefits wider North Dakota law only if he has voluntarily left his last employment without good cause or if he has been discharged from his last employment for reasons which would constitute misconduct within the meaning of the law, that the claimant did not quit his job nor was he discharged for misconduct, and that the law does not provide for a disqualification when an individual has been separated from his last employment based upon a mandatory retirement policy. The appeals tribunal affirmed the award.
The employer appealed again, stating: "Our position is the same. Mr. Albert J. George retired because of age under our mandatory retirement system." The Bureau reviewed the matter and affirmed the decision of the appeals referee. The employer then petitioned for judicial review, and the matter was reviewed by the district court under the terms of the Administrative Agencies Practice Act, Chapter 28-32, N.D.C.C.
The district court, relying on Stream v. Continental Machines, Inc., 261 Minn. 289, 111 N.W.2d 785 (1961), reversed the Employment Security Bureau and held that:
"By continuing employment with the State Hospital after initiation of the mandatory retirement plan, claimant's leaving was voluntary and he is therefore disqualified from receiving benefits. Accordingly the Bureau's determination is reversed."
Findings of fact, conclusions of law, and order for judgment and judgment followed, as did this appeal. We reverse the district court and direct the reinstatement of the decision of the Employment Security Bureau.
Our review, as well as the review of the district court, is limited by Section 28-32-19, *822 N.D.C.C., which requires us to affirm the decision of the administrative agency unless it is found that the decision is not in accordance with law, or was in violation of the constitutional rights of the appellant, or that any of the provisions of the Administrative Agencies Practice Act has not been complied with in the proceedings before the agency, or that the rules or procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by the findings of fact. This section was not superseded by the adoption of the Rules of Civil Procedure. O'Brien v. North Dakota Workmen's Compensation Bureau, 222 N.W.2d 379 (N.D.1974).
What we have before us now, of course, is a question of law. Decisions of administrative agencies, as well as trial courts, on questions of law are fully reviewable and are not fortified by the "clearly erroneous" rule. Northwestern Bell Telephone Co. v. Board of Commissioners of the City of Fargo, 211 N.W.2d 399 (N.D.1973); Ferguson v. Ferguson, 202 N.W.2d 760 (N.D.1972).
We believe the trial court's reliance upon the Minnesota cases is misplaced. In the first place, the Minnesota statute differs considerably from the pertinent North Dakota statute. The Minnesota statute, M.S.A. 268.09, provides that
"An individual shall be disqualified for benefits:
"(1) If such individual voluntarily and without good cause attributable to the employer discontinued his employment with such employer or was discharged for misconduct . . ." [Emphasis supplied.]
The North Dakota statute, Section 52-06-02, N.D.C.C., does not contain the words "attributable to the employer." It provides:
"An individual shall be disqualified for benefits:
"1. For the week in which he has filed an otherwise valid claim for benefits after he has left his last employment voluntarily without good cause, . . ."
It is to be noted that Minnesota relates the "good cause" to the employer, while the lack of such a qualification in North Dakota implies that the good cause is to be viewed from the standpoint of the employee.
In the case before us, George was willing to work but his employer refused to permit him to do so. So far as he was concerned, he was discharged, and discharged involuntarily and without good cause. If the employer had no retirement policy at all and refused to let George work, we would not hesitate to hold that he was discharged. The mere existence of a mandatory policy affecting all persons his age makes no difference as to his positionhe still is discharged.
Secondly, the Minnesota rule represents a minority view, much criticized by courts holding the majority view and by commentators. See Employment Security Commission v. Magma Copper Co., 90 Ariz. 104, 366 P.2d 84, 88, n. 7 (1961). We prefer the line of cases representing the majority view, led by Campbell Soup Co. v. Board of Review, Etc., 13 N.J. 431, 100 A.2d 287 (1953), written by Judge Brennan, later Justice of the United States Supreme Court. Other cases adhering to the majority view include Warner Co. v. Unemployment Compensation Board of Review, 396 Pa. 545, 153 A.2d 906 (1959); Texaco, Inc. v. Texas Employment Commission, 508 S.W.2d 957 (Tex.Civ.App. 1974); Employment Security Commission v. Magma Copper Co., supra; Reynolds Metals Co. v. Thorne, 41 Ala.App. 331, 133 So.2d 709 (1961), cert. denied, 272 Ala. 709, 133 So.2d 713 (1961).
The minority view is represented by Stream v. Continental Machines, Inc., supra; Bergseth v. Zinsmaster Baking Co., 252 Minn. 63, 89 N.W.2d 172 (1958); and Lamont v. Director of Division of Employment *823 Security, 337 Mass. 328, 149 N.E.2d 372 (1958). The effect of the latter case was negated by legislative enactment about six months later.
Many of the cases cited above involved discharge under the requirements of union-negotiated agreements. In such cases, the argument is often made that the employee, having consented to representation by the union, is bound by the result of its negotiations and therefore "voluntarily" retires upon reaching the mandatory retirement age. Such a contention was accepted by the Minnesota court in Bergseth, but was rejected by the New Jersey, Pennsylvania, Texas, Arizona, and Alabama courts in the cases cited above. The Stream case, supra, did not involve a union contract.
There is, of course, even less basis for a claim of voluntary retirement in the case before us, where George had nothing to do with the adoption of the mandatory retirement policy, either personally or through a union representative.
Many of the cases cited above place some reliance upon statutory provisions identical or similar to Section 52-06-31, N.D.C.C., which provides that "No agreement by any individual to waive, release, or commute his rights to benefits or any other rights under [this title] shall be valid." The courts following the majority rule have often rejected the argument that a retirement is voluntary because the employee continued to work after learning of the mandatory retirement policy, by holding that acceptance of this argument would violate the provisions of statutes such as Section 52-06-31. We agree. Even in the absence of a statute such as Section 52-06-31, we would be disinclined to hold that an employee must quit his job prior to reaching retirement age (thereby losing eligibility by leaving his employment voluntarily) or else be deemed to have lost his eligibility by staying on the job with knowledge of the retirement policy"Catch 22" reincarnated.
Reversed and remanded for entry of judgment in accordance with the decision of the North Dakota Employment Security Bureau.
ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.