Martin BLUESHIELD, Appellant,

v.

**JOB SERVICE NORTH DAKOTA and Devils Lake Sioux Manufacturing Corp., Appellees.**

Civ. No. 11120.

Supreme Court of North Dakota.

July 30, 1986.

Craft & Thompson, Fargo, for appellant; argued by David C. Thompson.

Sidney J. Hertz Fiergola, Asst. Atty. Gen., Bismarck, for appellee Job Service North Dakota, argued by Sidney Hertz Fiergola.

Bruce E. Bohlman, Grand Forks, for appellee Devils Lake Sioux Mfg. Corp.

ERICKSTAD, Chief Justice.

Martin Blueshield appeals from a district court order which affirmed a decision of Job Service North Dakota, denying Blueshield unemployment benefits because he was discharged from his previous employment for reasons constituting misconduct under Section 52–06–02(2), N.D.C.C. We affirm.

Blueshield worked as an assembler for the Devils Lake Sioux Manufacturing Corporation for a period of about two and one-half years. Testimony during the administrative hearing indicated that Blueshield worked at a "seam machine" which was separated from other similar machines by about five to seven feet.

On March 14, 1985, Blueshield "had a disagreement with a co-worker and used force and pushed this other employee." The disagreement between Blueshield and the other employee, Ephraim Hill, Jr., developed when Hill made some remarks when walking through Blueshield's work area.[1] The exact nature of the remarks is in dispute.[2] Blueshield responded to these remarks by pushing Hill. Hill did not push back but instead reported the incident to his supervisor. The amount of force used and the number of pushes by Blueshield is disputed and not clearly resolved by the findings made by Job Service.

Rule 37 of the *Hourly Employee's Handbook* of Devils Lake Sioux Manufacturing Corporation provides for automatic termination of employment when an employee uses physical force against another employee. In accordance with this rule, Blueshield was discharged from his employment.

Following his discharge, Blueshield applied for unemployment compensation benefits with Job Service North Dakota. This request was denied. Blueshield appealed the decision and requested a hearing which was subsequently held before an appeals referee on April 25, 1985.

During the hearing, Blueshield stated that he pushed Hill in response to Hill's harassment. In its findings, Job Service acknowledged that Blueshield felt "he was being harassed" and that he "may have been provoked," but found that "other recourse was available for the claimant rather than the use of physical force." Job Service further concluded that "the employer has established the claimant acted in a wilful manner and in substantial disregard of their interests. Therefore, it can

---

1. Blueshield asserts that "uncontroverted testimony showed that the co-worker's incursion into the area was for the purpose of harassing the Appellant." Our review of the record, specifically the testimony given by Joanne Schuster, the administrative assistant in the personnel department, indicates that Hill was instructed by his immediate supervisor to perform a task which required him to travel through Blueshield's work area.

2. Job Service noted in its findings that "remarks" were made between Hill and Blueshield but made no finding concerning the substance of these "remarks." Blueshield asserts that when Hill approached him he stated, "Don't be scared." "This net needs to be repaired." Then after being pushed, stated, "This is the last time you're going to push me." "I'm going to kill you. I should kill you." A fellow employee testified that he heard Hill say, "You old man, I'll kill you."

only be concluded the claimant was discharged ... for a reason that would constitute misconduct. Accordingly, the claimant is not entitled to job insurance benefits...."

The sole issue presented to our Court on appeal is whether or not the single incident of Blueshield physically pushing a co-worker constitutes "misconduct" under Section 52–06–02(2), N.D.C.C., which provides:

*"Disqualification for benefits.* An individual shall be disqualified for benefits:

\* \* \* \* \* \*

"2. For the week in which he has been discharged for misconduct in connection with his most recent employment and thereafter until such time as he:

a. Can demonstrate that he has earned remuneration for personal services in employment equivalent to at least ten times his weekly benefit amount as determined under section 52–06–04; and

b. Has not left his most recent employment under disqualifying circumstances.

"For the purpose of this subsection, 'most recent employment' means employment with any employer for whom the claimant last worked and was discharged for misconduct in connection with his employment or with any employer, in insured work, for whom the claimant last worked and earned wages equal to or exceeding ten times his weekly benefit amount." Section 52–06–02(2), N.D.C.C.

The term "misconduct" is not defined in the North Dakota Unemployment Compensation statutes. *Olson v. Job Service North Dakota,* 379 N.W.2d 285, 287 (N.D. 1985). It is established in North Dakota that "misconduct":

" '... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.' "

*Perske v. Job Service North Dakota,* 336 N.W.2d 146, 148–49 (N.D.1983) quoting *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636, 640 (1941); *Olson v. Job Service North Dakota,* 379 N.W.2d at 287; *Schadler v. Job Service North Dakota,* 361 N.W.2d 254, 256 (N.D.1985).

The factual basis of an administrative order is reviewed in a limited manner by considering the following questions: 1) Are the findings of fact supported by preponderance of the evidence? 2) Are the conclusions of law sustained by the findings of facts? 3) Is the agency decision supported by the conclusions of law? *Perske v. Job Service North Dakota,* 336 N.W.2d at 148. We have said when we review a decision of an administrative agency:

1. We do not make independent findings of fact or substitute our judgment for that of the agency, but determine only whether a reasoning mind could have reasonably determined that the factual conclusions were supported by the weight of the evidence.

2. We exercise restraint when we review administrative agency findings.

3. It is not the function of the judiciary to act as a super board when reviewing administrative agency determinations.

4. We will not substitute our judgment for that of qualified experts in the administrative agencies.

*Sonterre v. Job Service North Dakota,* 379 N.W.2d 281, 283–84 (N.D.1985); *Matter of Boschee,* 347 N.W.2d 331, 335 (N.D.1984).

Blueshield does not question that the findings of fact made by Job Service are supported by a preponderance of the evidence. Rather, Blueshield "asserts that the agency's decision is not properly supported by law." Blueshield further argues that the determination of whether or not an employee's conduct is "misconduct" is a question of law, and as such, this Court is free to exercise its independent judgment.

◼ We agree with Blueshield that administrative agency decisions on questions of law are fully reviewable by this Court. *Walter v. North Dakota State Highway Commissioner*, 391 N.W.2d 155, 159 (N.D. 1986); *Appeal of Dickinson Nursing Center*, 353 N.W.2d 754, 757–58 (N.D.1984); *Grant Farmers Mut. v. State by Conrad*, 347 N.W.2d 324, 327 (N.D.1984). We do not agree, however, that the determination of whether or not Blueshield's use of physical force constituted "misconduct" is purely a question of law. While there are occasions, because of the clarity of the particular facts and indisputability of the inferences drawn from those facts, when we can determine that a particular conduct does or does not constitute "misconduct" as a matter of law, *see Olson v. Job Service North Dakota*, 379 N.W.2d at 287, ordinarily the determination of whether or not particular conduct is "misconduct" is a question of fact. *See Schadler v. Job Service North Dakota*, 361 N.W.2d 254; *Perske v. Job Service North Dakota*, 336 N.W.2d 146. As can be implied from our definition of "misconduct" stated earlier herein, the determination of misconduct depends upon the facts and circumstances of each individual case and as such is subject to the

judgment of Job Service and its expertise. As we have often said, we should not substitute our judgment for that of qualified experts in the administrative agencies. *Sonterre v. Job Service North Dakota*, 379 N.W.2d at 283; *Matter of Boschee*, 347 N.W.2d at 335; *Perske*, 336 N.W.2d at 148.

The determination of whether or not an employee was discharged for misconduct is similar to a determination of whether or not a particular employee left his employment for a "good cause" attributable to the employer. Section 52–06–02(1), N.D.C.C. This determination is also ordinarily a question of fact. *See, Sonterre v. Job Service North Dakota*, 379 N.W.2d 281; *Lord v. Job Service North Dakota*, 343 N.W.2d 92 (N.D.1984). *See*, however, *State Hospital v. North Dakota Employment Security Bureau*, 239 N.W.2d 819 (N.D.1976), for a situation involving a question of law.

Blueshield argues that this isolated hotheaded incident does not justify denial of unemployment benefits because this incident did not interfere with his employer's business. The first part of this argument appears to be that a single hotheaded incident is not enough to deny a person unemployment benefits. To support this, Blueshield cites *Windsperger v. Broadway Liquor Outlet*, 346 N.W.2d 142, 145 (Minn. 1984); *Goodwin v. Employment Division*, 35 Or.App. 299, 581 P.2d 115, 117 (1978); and *Geraths v. Employment Division*, 24 Or.App. 1066, 544 P.2d 1066 (1976).[3] We have recently held, however, that a single incident *can* constitute misconduct disqualifying an employee from receiving unemployment compensation benefits. *Schadler*

---

**3.** These cases are all distinguishable for the same reason—there was no act of violence or physical force on behalf of the claimant. In *Windsperger*, a sharply divided Minnesota Supreme Court concluded that an employee who was discharged for "insubordination and a temper tantrum" after an incident in the manager's office, where no customers or other employees heard the confrontation and no vulgarity, profanity, or physical force was used was not discharged for "misconduct" within the meaning of the statute. 346 N.W.2d 142. *See also*, companion case of *Sticha v. McDonald's No. 291*, 346

N.W.2d 138 (Minn.1984). In *Geraths*, the court concluded that an employee was not discharged for "misconduct" when she was discharged from her employment after leaving work early to respond to a "frantic telephone call from her daughter," and failing to notify her supervisor before her departure because she believed her supervisor was out of the plant. 544 P.2d 1066. In *Goodwin*, the court concluded that an employee who was discharged after arguing with an assistant manager for approximately 15 to 20 minutes was not discharged for "misconduct." 581 P.2d 115.

*v. Job Service North Dakota,* 361 N.W.2d at 257.

An isolated hotheaded incident certainly will not necessarily result in disqualification of unemployment compensation benefits because of "misconduct." Whether or not an isolated incident constitutes "misconduct" depends upon the facts and circumstances of each individual case. *See* generally *Schadler v. Job Service North Dakota,* 361 N.W.2d 254. In *Schadler,* we agreed with Job Service that a single unexcused absence of a nurse's aide at a nursing care facility did constitute misconduct because of the "critical importance" of the care given by nurses' aides to the residents of the facility.

We do not believe that it can be seriously questioned that a single incident involving an employee's use of physical force also *can* be of critical importance rising to the level of misconduct. This determination, however, depends upon the facts and circumstances of a particular case. It is the duty of Job Service to determine whether or not the facts of a particular case give rise to misconduct and it is the duty of our Court to uphold Job Service's decision if it is supported by a preponderance of the evidence.

Both parties in the instant case have referred us to other state court cases in which an employee was discharged from employment because of the employee's use of physical force or violence. Blueshield refers us to *Brown v. Lockwood,* 380 So.2d 685 (La.App.1980), in which a Louisiana Court of Appeals determined that an employee was entitled to unemployment benefits after she was discharged from work for fighting. The court concluded, however, that the claimant was justified because she acted in self defense after being slapped in the face and cornered by two other employees. There is no evidence in the instant case that Blueshield acted in self defense or in response to physical aggression by Hill.

Job Service refers us to several cases in which unemployment benefits were denied to an employee who was discharged for using physical force or violence. *Perez v. Unemployment Compensation Board of Review,* 58 Pa.Cmwlth. 282, 427 A.2d 763 (1981); *Wisniewski v. Unemployment Compensation Board of Review,* 34 Pa. Cmwlth. 332, 383 A.2d 254 (1978); *Unemployment Compensation Board of Review v. Vojtas,* 23 Pa.Cmwltn. 431, 351 A.2d 700 (1976); *Beville v. Unemployment Compensation Board of Review,* 15 Pa.Cmwlth. 371, 327 A.2d 197 (1974); *McGraw-Edison Co. v. Dept. of Industry, Labor & Human Relations,* 64 Wis.2d 703, 221 N.W.2d 677 (1974); *McCullough v. Unemployment Compensation Board of Review,* 197 Pa. Super. 389, 178 A.2d 813 (1962); *Miner v. Administrator, Unemployment Compensation Act,* 23 Conn.Supp. 206, 180 A.2d 473 (1961). While several of these cases are somewhat persuasive, we find *Wisniewski v. Unemployment Compensation Board of Review,* although it is not an appellate court decision, especially relevant because of the apparent similarity of its facts to the instant case.[4] In *Wisniewski,* the claimant pushed a fellow employee "about a couple of feet" after the other employee "began mouthing off" and called the claimant a "dirty bastard." The court, in rejecting the claimant's argument that "he had good cause for his conduct" stated, "Words, however gross and abusive, do not justify an assault and battery."

As we noted earlier herein, "misconduct" "is ... conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee." Reasonably implied in the decision of Job Service is the conclusion that Blueshield violated a rule designed to insure safety, not only efficiency, in a plant equipped with machinery which, if not op-

4. The remainder of the cases referred to us by Job Service are distinguishable on their facts, often because the amount of force used by the discharged employee appears to be of greater magnitude than the force used by Blueshield.

erated in an atmosphere of calm conducive to such a dual objective, could be very detrimental to the employer and dangerous to the employees. In the instant case, Job Service found that Blueshield's use of physical force was made "in a wilful manner and in substantial disregard" of his employer's interest. We believe a preponderance of the evidence supports this conclusion and therefore that Blueshield's use of physical force constitutes "misconduct," pursuant to 52-06-02(2), thus disqualifying him from receiving unemployment compensation benefits.

Accordingly, we affirm.

VANDE WALLE, J., concurs.

LEVINE, Justice, concurring specially.

Ironically, I concur in the result while agreeing with much of the dissent's analysis that misconduct is a mixed question of fact and law. However, I believe that the evidence supports the agency's conclusion that Blueshield's use of physical force was made in a willful manner and in substantial disregard of his employer's interest and that that conclusion is correct.

The employer's interest obviously is to have its employees perform their duties not only without actually engaging in fighting but also without acting in a manner that provokes violence. Here, Blueshield's pushing of Hill, whatever its degree or however "isolated" its occurrence, would most certainly have precipitated violence had it not been for the intercession of a third party. That intermediary, Raymond Little Wind, testified that when he heard the "commotion" between Blueshield and Hill, he "went over there, they were both standing there ready to hit with their fist.... they were standing there with their guards up.... I got inbetween them and I pushed Ephraim Hill Jr. away...." Little Wind also disclosed that he had to intervene yet a second time when a fight between Blueshield and Hill threatened to break out again.

The only reason the pushing by Blueshield did not escalate into a full scale brou-

haha was Little Wind's intervention. The seriousness of the pushing therefore cannot be viewed in a vacuum as the dissent proposes, but must be evaluated in the context of the real world and in particular, the world of Blueshield's workplace, where even "an isolated incident" of pushing had the potential for serious mischief. Viewing Blueshield's conduct in the context of the workplace where it occurred, I believe it constituted a willful use of physical force in substantial disregard of his employer's interest. Thus I concur in affirming the district court order affirming the decision of Job Service.

GIERKE, J., concurs.

MESCHKE, Justice, dissenting.

Section 52-06-02(2), N.D.C.C., says that an individual who "has been discharged for misconduct in connection with his most recent employment" is disqualified for unemployment compensation. It has been left to the courts to define the nature of the misconduct that disqualifies. This court has drawn on the widely accepted definition found in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941). *Perske v. Job Service North Dakota*, 336 N.W.2d 146 (N.D.1983):

> "The Wisconsin Supreme Court noted the public policy of cushioning the effect of unemployment by a series of benefit payments and determined that this policy would be defeated if mere mistakes, errors in judgment, and unintentional carelessness were considered to be within the definition of 'misconduct.'" *Id.* at 148.

While an employer may set any standards of conduct for continued employment that the employer chooses, the employer does not control the qualifications for unemployment compensation. "[T]he issue is not whether or not the employer had the right to discharge the employee, but rather the issue is whether or not Job Service is justified in denying benefits for the conduct in question." *Perske, supra,* 336 N.W.2d at 148. While an employer may well find cause for discharge in incompetency or unsatisfactory conduct, it is estab-

lished that " 'mere insufficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion' " are not deemed misconduct sufficient to disqualify a claimant. *Perske, supra,* 336 N.W.2d at 149.

Only serious kinds of job "misconduct" disqualify. Disqualifying misconduct is limited to that which demonstrates a "wilful or wanton disregard of an employer's interests." Thus, " 'deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee' " are sufficiently serious misconduct to disqualify. So also are " 'carelessness ... of such degree or recurrence as to manifest equal culpability [wilful or wanton disregard of an employer's interest], wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.' " *Id.* at 148.

In this case, the Job Service referee found:

"The claimant worked as an assembler for the above employer for about two and a half years. His last day of work was March 14, 1985. The employer discharged the claimant after the claimant had a disagreement with a co-worker and used force and pushed this other employee. Their personnel policy provides automatic termination when physical force is used under these circumstances.

"The claimant feels he was being harassed by the other co-worker involved. A disagreement developed when this employee came through the claimant's work area. Remarks were made, and the claimant pushed the other employee."

The referee reasoned:

"Although the claimant may have been provoked, he was in violation of the employer's policy. Other recourse was available for the claimant rather than the use of physical force. The employer has established the claimant acted in a willful manner and in substantial disregard of

their interests. Therefore, it can only be concluded the claimant was discharged and for a reason that would constitute misconduct. Accordingly, the claimant is not entitled to job insurance benefits as provided in the deputy's determination."

On review of an administrative decision, we have an independent obligation to determine whether a preponderance of the evidence supports the findings of fact, whether the findings sustain the conclusions of law, and whether the conclusions support the decision of the agency. § 28–32–19, N.D.C.C. We exercise restraint in that review so that we do not improperly substitute our judgment for that of the agency on factual matters. But, this court should not simply rubber stamp the action of the agency. Rather, we should satisfy ourselves that the agency has acted properly under the applicable law.

The opinion of the Chief Justice views the determination of whether particular conduct is "misconduct" as a question of fact, which "depends upon the facts and circumstances of each individual case and as such is subject to the judgment of Job Service and its expertise." I view "misconduct" as a mixed question of fact and law, where the Job Service must make findings from the evidence to arrive at the conclusion of "misconduct." Compare *State Hospital v. North Dakota Employment Security Bureau,* 239 N.W.2d 819 (N.D.1976) which held that whether an individual "voluntarily" left his employment so as to disqualify him from benefits was a question of law.

The opinion of the Chief Justice does recognize that "[a]n isolated hotheaded incident certainly will not necessarily result in disqualification of unemployment compensation benefits because of 'misconduct' " but concludes that "a preponderance of the evidence supports th[e] conclusion" that "Blueshield's use of physical force was made 'in a wilful manner and in substantial disregard' of his employer's interest." The evidence that so preponderates does not appear to be identified.

Virtually the entire evidence about the incident was given by the claimant himself, in his inarticulate way. It was not clarified, probably because Blueshield was not represented by counsel. Blueshield responded to the referee's questions as follows:

"Q   Okay.  D—did you push him?

"A   Yeah.   But, well, this—this first rule here says, you know, he—he was in my—he was in my working area.

"Q   Okay.  And I think we—we've kind of covered that already.  You pushed him because he was in your work area?

"A   Yeah.

"Q   Okay.  He was coming by and he— and he—and you just went over and pushed him?

"A   No.  He—he came right under my working area to where I was working.

"Q   Yeah?  He came under your work area?

"A   Yeah.

"Q   Okay.  Then what happened?

"A   I—I pushed him out of the way, out of my working area.

"Q   As he was coming under your work area, you pushed him out of the way?

"A   He wasn't walking by carrying any rejects.  He just—he just came right over and I don't think he—he should be carry these rejects, these nets over to— but at this time, he wasn't doing that. He just came right over.

"Q   Okay.  He wasn't carrying anything?

"A   Nothing.  No.

"Q   Okay.  He came under your work area?

"A   Yeah.

"Q   Okay.  And while he's coming under your work area, you pushed him?

"A   Yeah.

"Q   Okay.  The reason you pushed him is because he was in your work area?

"A   Yeah.   And   he   was   harassing me...."

We cannot discern "force," "fight," or "willfulness" in this evidence.  The incident was isolated, not repeated.  The incident was instigated by harrassment from the other employee upon entering claimant's work area.  Not even the slightest harm to the co-employee was suggested.  And, harm to the employer's interest was not evidenced, but must be "implied" from a guess that the employer's rule against "fighting" was, as the opinion of the Chief Justice puts it, "designed to insure safety, not only efficiency, in a plant equipped with machinery...."

The employer's policy prohibited "fighting or physical violence."  "Fighting or physical violence" would generally be the serious kind of "misconduct" that would justify both discharge and disqualification for unemployment compensation.  But, the evidence and the findings here show only an isolated mistake.  They do not support a conclusion of "misconduct."  Therefore, I would hold that Blueshield is not disqualified for unemployment compensation.

I would reverse.