Leah HINS, Petitioner and Appellee,

v.

LUCAS WESTERN, Respondent and Appellant,

and

Job Service North Dakota, Respondent.

Civ. No. 910422.

Supreme Court of North Dakota.

April 21, 1992.

Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for petitioner and appellee; argued by William A. Mackenzie.

Deborah Joan Carpenter (argued), Bismarck, for respondent and appellant.

Douglas Alan Bahr, Atty. Gen. Office, Bismarck, for respondent.

ERICKSTAD, Chief Justice.

Lucas Western appeals from the Judgment of the District Court for Stutsman County, reversing the decision of Job Service of North Dakota denying Leah Hins unemployment benefits. We affirm.

On or about February 21, 1991, Leah Hins applied for unemployment benefits after being terminated from employment with Lucas Western. Job Service, through its claims deputy, determined that Hins was terminated because of "misconduct" within the meaning of section 52–06–02(2), N.D.C.C., and on March 13, 1991, denied her application. Hins sought administrative review and on or about April 16, 1991, Job Service, through Appeals Referee Bob Moyle, reversed its earlier decision and awarded Hins benefits, concluding that Hins had not engaged in "misconduct" within the meaning of section 52–06–02(2), N.D.C.C. The appeals referee's decision sets forth in relevant part:

"FINDINGS OF FACT:

"The Claimant worked approximately 16½ years for the above employer. She last worked as a processing worker in the employer's painting department. The claimant worked full time, from 3:30 p.m. to midnight, and her last day of work was February 12, 1991.

"A conflict had existed between the claimant and a co-worker for the past one or one and a half years. This was considered a personality conflict but some incidents occurred that involved provocation of the claimant by the co-worker. For example, the co-worker shut off an exhaust fan in the paint department and drove behind the claimant with bright headlights on. The claimant made her employer aware of the problem with the ventilation fan and confronted her co-worker in the employer's parking lot after work at about 12:15 p.m. on the morning of February 13, 1991. The co-worker waited until the claimant began to exit from the parking lot and followed the claimant's car with the bright headlights on. The claimant stopped her car, got out, and walked backed [sic] to her co-worker's car. Her co-worker rolled down the window and yelled at the claimant, 'You're lying about me.' The claimant grabbed her co-worker by the hair, and let go, and returned to her car and left.

"The employer was made aware of the incident involving the claimant and her co-worker in the parking lot on the morning of February 13, 1991. Both the claimant and her co-worker were suspended from work pending an investigation by the employer. The employer determined that the claimant's employment would be terminated and the co-worker should be suspended for a period of 30

days. The claimant was discharged on February 20, 1991, and thereafter she filed a new claim for job insurance benefits.

"REASON FOR THE DECISION:

"*Misconduct* has been defined as conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer. "Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct.

"The claimant responded to provocation from a co-worker during the incident on the morning of February 13, 1991. She did take reasonable steps on previous occasions and perhaps should have done likewise on the last occasion. However, it was the claimant who was being provoked in the latter incident, and her actions may not be deemed as misconduct. Accordingly, the claimant is entitled to job insurance benefits.

"DECISION:

"The determination of the deputy dated March 13, 1991, is reversed. The claimant is entitled to job insurance benefits effective February 24, 1991, and thereafter providing she has met and continues to meet all other eligibility requirements of the law. The employer's account is chargeable."

In response to a request from Lucas Western, Job Service reviewed the appeals referee's decision and on May 6, 1991, through Micheal Deisz, its executive director, made a final determination reversing the decision of the appeals referee. This final decision of Job Service sets forth in relevant part:

"FINDINGS OF FACT:

"The findings set forth in the Referee's Decision are supported by a preponderance of the evidence contained in the record and are adopted by the Bureau as its findings. In addition, the following findings are added by the Bureau to the Referee's Findings after the second sentence of the last paragraph of those Findings. The employer investigation indicated that the claimant grabbed the co-worker by the hair and pushed the co-worker's face into the steering wheel. The claimant did have other recourse besides stopping her vehicle, getting out, and using physical force on the co-worker. This recourse would have involved bringing the matter to the attention of her supervisor and management.

"REASONS FOR THE DECISION:

"*Misconduct* has been defined as conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent, or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer. "Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct.

"While the claimant may have been provoked by her co-worker, the provocation did not involve use of physical force by the co-worker against the claimant. It is noted that it was the claimant who stopped her vehicle, got out, walked over to the co-worker's vehicle, and grabbed the co-worker by the hair. While there is a dispute as to whether the claimant pushed the co-worker's face into the steering wheel, it is undisputed that the claimant grabbed the co-worker by the hair. This use of physical force by the claimant against her co-worker demon-

strates a deliberate disregard of the standards of behavior which the employer has the right to expect of the employee. The claimant did have other recourse available to her other than use of physical force on the co-worker. The actions of the claimant fall within the definition of misconduct and she is to be disqualified from benefits accordingly.

"DECISION:

"The decision of the Appeals Referee is reversed. The claimant is disqualified from benefits effective February 24, 1991, until such time as she earns ten times her weekly benefit amount in employment and has not separated from employment under disqualifying conditions."

After learning of Job Service's final decision, Hins appealed to the district court which on or about October 14, 1991, reversed the final decision of Job Service. This appeal by Lucas Western followed.[1]

■ Initially, we note that, when an administrative agency decision is appealed to this court from a district court, we review the final decision of the agency and not that of the district court. *Speedway, Inc. v. Job Service North Dakota*, 454 N.W.2d 526, 527 (N.D.1990). We limit our review to the record before the agency and do not consider the findings of the district court. *Asbridge v. North Dakota State Highway Commissioner*, 291 N.W.2d 739, 743 (N.D. 1980). "But, the analysis by the district court is entitled to respect because the legislatively mandated review by the district court cannot be ineffectual." *Medcenter One, Inc. v. Job Service North Dakota*, 410 N.W.2d 521, 524 (N.D.1987). Also, "where the agency has rejected a hearing officer's decision, a necessary part of our inquiry is whether the agency's decision satisfactorily explains the reason for not

following the hearing officer's recommendation." *Id.* *See also Schultz v. North Dakota Department of Human Services*, 372 N.W.2d 888 (N.D.1985).

Sections 28–32–19 and 28–32–21, N.D.C.C., establish the scope and procedure for this Court's review of administrative agency decisions or orders. We will affirm an administrative agency decision unless one of the six enumerated reasons listed in section 28–32–19 is found to exist. *Marion v. Job Service North Dakota*, 470 N.W.2d 609, 611 (N.D.1991). We have recognized that our review under section 28–32–19, N.D.C.C., essentially involves a three-step process: (1) Are the findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the findings of fact? (3) Is the agency decision supported by the conclusions of law? *Perske v. Job Service North Dakota*, 336 N.W.2d 146, 148 (N.D. 1983).

In applying the preponderance standard for review of administrative agency findings of fact, "we do not make independent findings of fact or substitute our judgment for that of the agency, but we determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached by the agency were proved by the weight of the evidence from the entire record." *Marion v. Job Service North Dakota*, 470 N.W.2d at 611; *Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214 (N.D. 1979). This Court exercises restraint and will not act as a "super board" when reviewing administrative agency findings and determinations. *Skjefte v. Job Service North Dakota*, 392 N.W.2d 815, 817 (N.D. 1986).

Under section 52–06–02(2), N.D.C.C.,[2] a person is disqualified from receiving unem-

---

1. Job Service did not appeal the decision of the district court and did not participate in this appeal.

2. Section 52–06–02(2), N.D.C.C., reads:
   "An individual is disqualified for benefits:
   &ast; &ast; &ast; &ast; &ast; &ast;
   "2. For the week in which he has been discharged for misconduct in connection with

his most recent employment and thereafter until such time as he:
   a. Can demonstrate that he has earned remuneration for personal services in employment equivalent to at least ten times his weekly benefit amount as determined under section 52–06–04; and
   b. Has not left his most recent employment under disqualifying circumstances.

ployment benefits if he or she was "discharged for misconduct in connection with his [or her] most recent employment." The term "misconduct" has not been defined by North Dakota Unemployment Compensation law leaving it to the judiciary to give meaning to the term.

In *Perske v. Job Service North Dakota,* we adopted the widely accepted definition of "misconduct" as enunciated by the Wisconsin Supreme Court in *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N.W. 636 (1941). Under this definition, "misconduct":

"... is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

*Perske v. Job Service North Dakota,* 336 N.W.2d at 148–149, quoting *Boynton Cab Co. v. Neubeck,* 296 N.W. at 640. This definition recognizes that "the public policy of cushioning the effect of unemployment ... would be defeated if mere mistakes, errors in judgment, and unintentional carelessness were considered within the definition of 'misconduct.'" *Perske v. Job Service North Dakota,* 336 N.W.2d at 148.

We have recently concluded that the determination whether or not a given behavior constitutes "misconduct" is a mixed question of fact and law. *Marion v. Job Service North Dakota,* 470 N.W.2d at 611–612; *Medcenter One, Inc. v. Job Service North Dakota,* 410 N.W.2d 521, 524 (N.D. 1987). "Where the facts are disputed we apply the deferential standard of review applicable to findings of fact and determine only whether a reasoning mind could have determined that the factual conclusions were proved by the weight of the evidence." *Marion v. Job Service North Dakota,* 470 N.W.2d at 612. However, "there are occasions, because of the clarity of the particular facts and indisputability of the inferences drawn from those facts, when we can determine that a particular conduct does or does not constitute 'misconduct' as a matter of law, *see Olson v. Job Service North Dakota,* 379 N.W.2d [285] at 287 [N.D.1985]." *Blueshield v. Job Service North Dakota,* 392 N.W.2d 70, 73 (N.D. 1986).

"As we have often said, we should not substitute our judgment for that of qualified experts in the administrative agencies. *Sonterre v. Job Service North Dakota,* 379 N.W.2d [281] at 283 [N.D.1985]; *Matter of Boschee,* 347 N.W.2d [331] at 335 [N.D. 1984]; *Perske* 336 N.W.2d at 148." *Blueshield v. Job Service North Dakota,* 392 N.W.2d at 73.

In this case, the only factual dispute is whether Hins merely grabbed her co-worker's hair and then immediately let go or whether she additionally pushed the co-worker's face into the steering wheel of the car. Whether or not a determination was made on this factual issue is less than clear from Job Service's final determination. However, we do not find that a resolution of this issue would be determinative. Accordingly, we assume, for purposes of this opinion, that Hins did in fact push the co-worker's face into the steering wheel of the car.

On appeal, Lucas Western primarily relies on this Court's holding in *Blueshield v.*

For the purpose of this subsection, 'most recent employment' means employment with any employer for whom the claimant last worked and was discharged for misconduct in connection with his employment or with any employer, in insured work, for whom the claimant last worked and earned wages equal to or exceeding ten times his weekly benefit amount."

*Job Service North Dakota,* 392 N.W.2d 70 (N.D.1986), to uphold the decision of Job Service. However, *Blueshield* involved a significantly different set of facts. In *Blueshield,* the conduct in question "violated a rule designed to ensure safety, not only efficiency, in a plant equipped with machinery which, if not operated in an atmosphere of calm conducive to such dual objective, *could be very detrimental to the employer and dangerous to the employees." Blueshield v. Job Service North Dakota,* 392 N.W.2d at 74–75 (emphasis added). In this case, there was no danger to third party employees or the employer's property. The specific behavior involved in *Blueshield* was also markedly different from what occurred in this case. As Justice Levine noted in her special concurrence in *Blueshield:*

> "Here, Blueshield's pushing of Hill, whatever its degree or however 'isolated' its occurrence, would most certainly have precipitated violence had it not been for the intercession of a third party. That intermediary, Raymond Little Wind, testified that when he heard the 'commotion' between Blueshield and Hill, he 'went over there, they were both standing there ready to hit with their fist.... they were standing there with their guards up.... I got in between them and I pushed Ephraim Hill Jr. away....' Little Wind also disclosed that he had to intervene yet a second time when a fight between Blueshield and Hill threatened to break out again."

*Blueshield v. Job Service North Dakota,* 392 N.W.2d at 75 (Levine, J., specially concurring).

Job Service's decision ultimately rests on its assumption that the use of any physical force by one worker against a co-worker amounts to a deliberate disregard of the standards of behavior which the employer has the right to expect. While it is true that an employer legitimately has a right to expect that his or her employees will not engage in physical altercations, the issue in "an appeal such as this ... is not whether or not the employer had the right to discharge the employee, but rather ... whether or not Job Service is justified in denying benefits for the conduct in question." *Perske v. Job Service North Dakota,* 336 N.W.2d at 148. It is only where the deliberate disregard of those standards of behavior evinces or amounts to a willful or wanton disregard of an employer's interests, that the conduct in question can be deemed "misconduct." Where the conduct in question is an isolated incident, the connection between the conduct and the impact or potential impact on the employer's interests must be especially close.

In *Schadler v. Job Service North Dakota,* 361 N.W.2d 254, 257 (N.D.1985), we noted that the claimant's isolated conduct in that case compromised the care given to the residents of the employer nursing home. In *Blueshield v. Job Service North Dakota,* we recognized, in the words of Justice Levine, that in "the world of Blueshield's workplace, ... even 'an isolated incident' of pushing had the potential for serious mischief." *Id.* at 75 (Levine, J., specially concurring). Such facts and circumstances are not present in this case.

Because the decision of Job Service was based upon an erroneous view or application of the law, the judgment of the district court is affirmed, and this matter is remanded to Job Service for appropriate disposition.

JOHNSON, MESCHKE, LEVINE and VANDE WALLE, JJ., concur.