1999 ND 42

Lynda JOHNSON, Petitioner
and Appellant,

v.

JOB SERVICE NORTH DAKOTA,
Respondent and Appellee,

and North Dakota Fair Housing
Council, Respondent.

No. 980243.

Supreme Court of North Dakota.

March 18, 1999.

Duane Houdek of Legal Assistance of North Dakota, Bismarck, for petitioner and appellant.

Douglas A. Bahr, Assistant Attorney General, Bismarck, for respondent and appellee.

NEUMANN, Justice.

[¶ 1] Lynda Johnson appeals from the district court judgment affirming the decision of Job Service North Dakota (Job Service) and concluding Johnson was fired for misconduct and therefore not entitled to unemployment benefits. We affirm.

I

[¶ 2] Johnson was employed as the executive director of the North Dakota Fair Housing Council (Council) for approximately nine months. Financial and program audits of the Council were conducted throughout the second week of September 1997. The Council's Board of Directors (Board) was informed of allegations of incomplete payroll ledgers, payroll errors, employees paid twice for the same period, time sheets not completed, taxes not paid correctly resulting in IRS notices, and overtime being incorrectly paid to the executive director. On September 9, 1997, the Board received a grievance from a Council employee alleging Johnson was withholding information from the Board.

[¶ 3] On September 11, 1997, Johnson and other staff received a letter advising of the Board's unanimous decision to immediately close the Council's offices until further notice and requiring staff to remove personal effects from the office. The letter indicated they would continue to receive their paychecks. Johnson received another letter on September 18, 1997, directing:

> The Board of Directors for the North Dakota Fair Housing Council is conducting an investigation into the grievance filed by one of our employees as well as an investigation into issues involving office operations. To that end, you are ordered to appear before the investigative committee to answer any questions the committee may have regarding the issues stated above. Any documentation you think will be helpful or that you wish to present to the committee should be brought with you at that time.
>
> . . . .
>
> Your attendance is mandatory. Failure to attend this meeting at the assigned time, without good cause, will subject you to immediate termination.

[¶ 4] The meeting was scheduled for Saturday, September 20, 1997. Johnson filed a claim for unemployment benefits with Job Service and contacted an attorney to represent her at the meeting. The attorney was unable to attend the meeting, but advised Johnson to attend and request an extension of time if she determined legal representation of her interests was necessary during questioning. Johnson did not call a Board member before the meeting to inform them her attorney could not be present nor did she have her attorney call the Board on her behalf to seek a continuance.

[¶ 5] Johnson attended the meeting on September 20, 1997. Legal counsel for the Board was present and attempted to question Johnson. Johnson declined to answer because she felt she needed to be represented by legal counsel. She stated she did not have adequate time to secure counsel before the meeting, but did not offer any further explanation. Neither did she suggest a time convenient for all to meet again, nor did she inform the Board of her attorney's identity. The Board fired Johnson on September 22, 1997.

[¶ 6] On October 15, 1997, the claims deputy determined Johnson was fired for refusal

to answer questions at the Board meeting without having an attorney present. The deputy reasoned, "[t]he meeting could have been rescheduled so [her] attorney could have been present during the questioning. Not answering the questions without [her] attorney present is not considered misconduct. Therefore, benefits are allowed."

[¶ 7] The Council appealed the decision to an appeals referee who affirmed the claims deputy's determination. Job Service reversed the appeals referee's decision, ruling Johnson was ineligible for unemployment benefits because she was fired for disqualifying misconduct. Specifically, Job Service found Johnson's refusal to answer questions was an unreasonable response to the Board's reasonable investigatory questions, and amounted to insubordination by Johnson. Job Service stated, "[a]s executive director of the organization the claimant reported to the board and was responsible for the operations of the organization. In this position the claimant had an obligation to be responsive to the board and her failure to do so constitutes insubordination." On May 13, 1998, the trial court affirmed Job Service's decision. Johnson appealed.

[¶ 8] On appeal to this Court, Johnson argues refusing to answer questions at an investigatory board meeting fails to constitute disqualifying misconduct. She also asserts Job Service did not adequately explain its rationale for rejecting the conclusions of the claims deputy and the appeals referee.

## II

[¶ 9] North Dakota Century Code § 28-32-19 governs our review of an agency decision. We must affirm Job Service's decision if: (1) the findings of fact are supported by a preponderance of the evidence; (2) the conclusions of law are sustained by the findings of fact; and (3) the decision is supported by the conclusions of law. *Proserve Corp. v. Rainey*, 536 N.W.2d 373, 376 (N.D.1995). We review Job Service's decision, not the decision of the trial court. *Id.*

[¶ 10] This Court has discussed the dual objectives of unemployment compensation. *Newland v. Job Service North Dakota*, 460 N.W.2d 118, 121 (N.D.1990). The primary objective of N.D.C.C. § 52-01-05 is to "soften the harsh impact of involuntary unemployment." *Id.* That objective is obtained by liberally construing the unemployment compensation laws in favor of the employee. *Id.* "The primary objective is tempered by a competing objective, declared at section 52-06-02, of protecting employers 'from quits that have nothing to do with the employer or the employment,' and from dismissals based upon employee 'misconduct.'" *Hulse v. Job Service North Dakota*, 492 N.W.2d 604, 607 (N.D.1992) (quoting *Newland*, 460 N.W.2d at 121). Thus, while unemployment compensation is intended to strike a balance between the rights of the employer and the employee, that balance should favor the employee. *Newland*, 460 N.W.2d at 121.

> We achieve that goal by narrowly, but reasonably, construing the disqualifying provisions of section 52-06-02. All that really means is that an employee should be disqualified for misconduct only when the facts and circumstances of a case come within the clear meaning of the words used in the provisions of section 52-06-02, and, consequently, within the clear meaning of the language contained in our definition of misconduct.

*Hulse*, 492 N.W.2d at 607-08 (citations omitted).

[¶ 11] Consistent with the legislatively intended balance, under N.D.C.C. § 52-06-02, an employee who has been discharged because of misconduct may not receive unemployment benefits. The term "misconduct" is not statutorily defined; however, this Court has adopted the following definition:

> "Misconduct is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good perfor-

mance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

*Proserve*, 536 N.W.2d at 376 (quoting *Perske v. Job Service North Dakota*, 336 N.W.2d 146, 148–49 (N.D.1983)).

[¶ 12] The nature of the employment is a consideration when deciding whether an employee's conduct constitutes misconduct. *Holiday Inn v. Karch*, 514 N.W.2d 374, 376 (N.D.1994). The issue is a mixed question of fact and law. *Hulse*, 492 N.W.2d at 606. "[T]he evidence must support its findings of fact which, in turn, must sustain its conclusion regarding misconduct." *Medcenter One, Inc. v. Job Service North Dakota*, 410 N.W.2d 521, 524 (N.D.1987). If confronted with disputed facts, we defer to Job Service's factual conclusions and ascertain only whether a reasoning mind could have reasonably determined the factual conclusions were proven by a preponderance of the evidence. *Proserve*, 536 N.W.2d at 376. However, when the facts are undisputed, and contradictory inferences cannot reasonably be drawn from those undisputed facts, we review the legal conclusion anew. *Id.* Because there are no disputed facts in this case, we review Job Service's legal conclusion anew.

[¶ 13] Job Service determined Johnson's refusal to answer questions at the meeting constituted insubordination disqualifying her from receiving unemployment benefits.[1] "[A]n isolated episode of poor judgment constitutes disqualifying misconduct under NDCC § 52–06–02(2) only if the facts and circumstances of the case require it." *Hulse*, 492 N.W.2d at 608. For an isolated incident to be disqualifying conduct the incident must violate an important employer interest or explicit policy. *Karch*, 514 N.W.2d at 377. We therefore must determine whether Johnson's refusal to answer questions without an attorney present at the September 20, 1997, meeting violated an important

employer interest or violated explicit policy such that her actions would constitute misconduct as we have defined it.

[¶ 14] We have previously determined single incidents can constitute disqualifying misconduct. In *Schadler v. Job Service North Dakota*, 361 N.W.2d 254, 257 (N.D.1985), we held a single unexcused absence by a nurse's aide was a willful disregard of the nursing home's interests. The presence of the nurse's aide at the facility was of "critical importance" and her absence compromised the care given to the residents. *Id.* In *Blueshield v. Job Service North Dakota*, 392 N.W.2d 70, 71 (N.D.1986), we affirmed Job Service's determination of misconduct when a plant employee responded to some remarks by a co-worker by pushing him while in the work area. The employee deliberately violated company policy necessary to ensure safety in a plant equipped with potentially dangerous equipment. *Id.* at 74–75. In *Proserve*, 536 N.W.2d at 375, the claimant was struck on the head with a cooking pot by a co-worker. She was aware of a company policy against fighting, but in retaliation took the pot, struck her co-worker, and grabbed a butcher knife before she was restrained by a third party. *Id.* We decided her "escalation of the encounter into a life-threatening situation constituted misconduct evidencing a willful disregard of her employer's interests." *Id.* at 379.

[¶ 15] By contrast, we have also found certain isolated incidents do not constitute disqualifying conduct. In *Karch*, 514 N.W.2d at 376–77, an employee failed to show up for work on Christmas Day after being first told she did not have to work that day, and then later told she would have to work that day. We determined that type of behavior is too far removed from an employer's important interests to be considered misconduct. *Karch*, 514 N.W.2d at 377. Furthermore, this behavior while violating an unwritten policy of the employer did not violate any explicit policy. *Id.*

---

1. Although the record indicates substantial issues regarding the Council's operation had been raised by the audit conducted in September, it is clear from the record those issues were not the basis for termination. Johnson was not told the results of the audit before the meeting. The decision to terminate was based upon Johnson's refusal to answer questions without counsel at the September 20 meeting.

[¶ 16] The situation presented here clearly falls within our decisions in *Schadler, Blueshield,* and *Proserve* and is distinguishable from *Karch.* Johnson was the executive director of the Council, and her actions were of "critical importance" to the Council's operations.

[¶ 17] Testimony in the record reflects the intent of the Board in conducting the September 20, 1997, meeting as it related to Johnson was to ask specific questions concerning the grievance filed against Johnson and the matters brought to surface from the audit. The Board intended to get Johnson's personal responses on those matters because she was the executive director and the grievance concerned her. The purpose of the meeting was even more relevant by virtue of Johnson's failure to provide a written response to the grievance filed against her as was required by the express policy of the Council.

[¶ 18] Johnson's testimony in the record further reflects she knew her job description made her answerable to reasonable questions and dictates of the Board, and she recognized it was reasonable for the Board to investigate the grievance against her. She also testified she knew a purpose of the meeting was to investigate the grievance and to obtain her position regarding the issues. Johnson indicated she did not remember any provision in the grievance procedure which provided for counsel to be present.

[¶ 19] Johnson argues her refusal to answer the questions was reasonable. At the meeting, the attorney for the Council asked Johnson a question. Johnson responded she did not wish to answer until she had an attorney present. Attorney for the Council attempted to ask another question, and Johnson responded in a similar manner. The record reflects Johnson did not name the attorney who would be representing her, even though she had previously talked to at least four attorneys, nor did she offer any information about when the meeting could be rescheduled to accommodate her needs. Simply put, Johnson unequivocally and with no attempt at compromise refused to answer questions she alone, by virtue of her employment position and involvement in the surrounding events, could satisfactorily answer.

[¶ 20] The facts in the record show, as a matter of law, this isolated incident goes beyond a good-faith error in judgment. This type of conduct clearly involved important interests of the Council and involved violations of explicit policies of the Council such that it is misconduct as a matter of law.

[¶ 21] We hold there is sufficient evidence in the record to prove Johnson's isolated incident of poor judgment constituted disqualifying misconduct. Therefore, as a matter of law, Job Service's conclusion of law can be sustained by its findings of fact.

 [¶ 22] Johnson next argues Job Service failed to satisfactorily explain its rationale for rejecting the claim's deputy and the appeals referee's decisions. "Although a hearing examiner has the advantage of hearing and seeing witnesses testify, an agency may reject the examiner's decision even on a question involving the credibility of contradictory witnesses." *Schultz v. North Dakota Dep't of Human Services,* 372 N.W.2d 888, 892 (N.D.1985). When rejecting a hearing officer's decision, an agency's findings of fact, conclusions of law, and the ultimate decision must be sufficient to explain the agency's rationale. *See, e.g., Carlson v. Job Service North Dakota,* 548 N.W.2d 389, 392 (N.D. 1996) (quoting *Schultz,* 372 N.W.2d at 892).

[¶ 23] Job Services's findings, conclusions, and decision contain numerous references to the record and the transcript of the hearing. In reaching its decision, Job Service noted Johnson was the executive director and consequently responsible for the day-to-day operations of the organization. Job Service also found the directive of the Board to appear and answer questions was reasonable under the circumstances, and Johnson's refusal to answer questions at the meeting prevented the Board from attempting to resolve the matters at issue. Job Service observed that Johnson, as executive director, "had an obligation to be responsive to the board and her failure to do so constitutes insubordination." It is clear from the record Job Service explained its reasons for reversing the hearing officer's decision.

III

[¶ 24] We affirm the judgment of the district court.

[¶ 25] VANDE WALLE, C.J., and MARING and SANDSTROM, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 26] I respectfully dissent. In my opinion, Johnson's conduct may have been grounds for termination, but it was not misconduct which, as a matter of law, disqualified Johnson from receiving Job Service benefits.

[¶ 27] An isolated incident constitutes disqualifying misconduct under N.D.C.C. § 52–06–02(2) only when the facts and circumstances of a case require it. *Hulse v. Job Service North Dakota,* 492 N.W.2d 604, 608 (N.D.1992). "Where the conduct in question is an isolated incident, the connection between the conduct and the impact or potential impact on the employer's interests must be especially close." *Hins v. Lucas Western,* 484 N.W.2d 491, 496 (N.D.1992). As the majority recognizes, an isolated incident must violate an important employer interest, or an explicit policy. *Holiday Inn v. Karch,* 514 N.W.2d 374, 377 (N.D.1994). However, that decision should have been made using the four-factor analysis applied in *Hulse,* at 608. *Hulse* requires an examination of whether Johnson's refusal to answer questions without an attorney representing her interests at the September 20, 1997, meeting demonstrated: (1) willful or wanton disregard of the Council's interests; (2) such careless or negligent conduct making the refusal a willful or wanton disregard of the Council's interests; (3) wrongful or evil intent; or (4) an intentional or substantial disregard of Johnson's duties and obligations or the Council's interests. *Id.* "Absent evidence of culpability rising to one of these rigorous levels, one episode of poor judgment does not constitute misconduct." *Id.*

[¶ 28] Job Service argues Johnson's conduct evidenced a willful or wanton disregard of the Council's interests because the Board's directive she "appear and answer questions concerning the investigation was reasonable under the circumstances." Although I agree the Council's request was reasonable, Johnson's refusal under the circumstances to answer questions without an attorney present was not such a willful and wanton disregard of the employer's interest as to constitute disqualifying misconduct as a matter of law.

[¶ 29] Job Service asserts "Johnson's refusal, as Executive Director of the Council, to provide the Board critical and essential information in its attempt to resolve the grievance and audit concerns constitutes a substantial disregard of her employer's interests." Johnson's position as the executive director was important, and I agree with Job Service that Johnson's responsibilities required her to answer reasonable questions asked by the Board. However, "[m]isconduct which may justify discharge may not justify a denial of benefits under our unemployment compensation laws." *Olson v. Job Service North Dakota,* 379 N.W.2d 285, 287 (N.D.1985). The record indicates Johnson did not unequivocally refuse to answer the Board's questions on September 20, 1997; she expressed discomfort in answering questions without an attorney present.

[¶ 30] Although the Board directed Johnson to bring any documentation she determined may be "helpful" to the meeting on September 20, 1997, the majority fails to consider the Board locked all offices on September 11, 1997. Johnson did not have access to any documentation she may have found "helpful" to defend herself against the grievance or to respond to issues involving office operations. Johnson was not given the results of the audit, so she would not have known in advance the specific operational issues the Board wanted to address. The fact, however, that the Board had already taken the drastic action of locking offices and directing staff to leave and take their personal effects would clearly signal the seriousness of the Board's concerns. It was reasonable for Johnson to feel uncomfortable answering questions without legal representation and without access to her records, considering the severity of the situation and the fact legal counsel for the Board was attempting to question her.

[¶ 31] There is no evidence in the record Johnson's conduct was so careless or negligent it made her refusal a willful or wanton disregard of the Council's interests. John-

son received the letter on Thursday, September 18, directing her to appear at the meeting scheduled for Saturday, September 20. Johnson testified she contacted four attorneys prior to the meeting, but was unsure which attorney she wanted to represent her. After observing the presence of the Board's attorney at the meeting, she felt legal representation was necessary. She asserts, and a letter from one of the attorneys corroborates, the attorney "advised [Johnson] to attend the hearing and recommended that if she felt she needed an attorney to represent her interests that she should request an extension of time to allow her to have an attorney present." Johnson's decision to act on this advice was not careless or negligent and was not made with wrongful or evil intent.

[¶ 32] The majority notes Johnson had not provided a written response to the grievance. It fails to note Johnson received the grievance on September 10. On September 11 the offices were locked leaving Johnson with no access to records to prepare a response. The majority states Johnson did not offer an alternative proposal for a meeting time when an attorney could be present. Johnson testified she was not given an opportunity to do so at the meeting on Saturday, September 20, and her employment was terminated on Monday, September 22.

[¶ 33] Job Service argues "Johnson's refusal could have caused the Council to lose f ·al funding and delayed the Board of Directors' ability to resolve the pending issues so the Council could continue its operation and address any public perception concerns raised by the issues under investigation." I agree an episode which jeopardizes the interests of the employer is disqualifying misconduct and this court has so held. *Schadler v. Job Service North Dakota*, 361 N.W.2d 254, 257 (N.D.1985). However, the operations of the Council had effectively been terminated by locking the offices several days earlier and there is no suggestion in the record of how a delay to allow Johnson to have an attorney present impacted on the Council's continued operation. There is insufficient evidence to prove Johnson's refusal to answer was an intentional or substantial disregard of her duties as executive director, or of the Council's interests. I agree the Board needed information from Johnson to further its investigation. But Johnson never unequivocally refused to answer questions. She expressed only concern, understandable under the circumstances, about answering questions without legal counsel. The claims deputy recognized the meeting could have been rescheduled permitting Johnson an opportunity to have counsel present and I agree.

[¶ 34] There is insufficient evidence in the record to prove Johnson's isolated incident of poor judgment constituted disqualifying misconduct. Johnson's conduct may have been unsatisfactory, and it may have been grounds to terminate her employment, but it was a good faith error in judgment. In my opinion, under the undisputed facts of this case, Job Service's conclusion that Johnson's acts were disqualifying misconduct cannot be sustained as a matter of law.

[¶ 35] Carol Ronning Kapsner